## GONG LUM ET AL. *v.* RICE ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 29.   Submitted October 12, 1927.—Decided November 21, 1927.

A child of Chinese blood, born in, and a citizen of, the United States, is not denied the equal protection of the laws by being classed by the State among the colored races who are assigned to public schools separate from those provided for the whites, when equal facilities for education are afforded to both classes.  P. 85.

139 Miss. 760, affirmed.

ERROR to a judgment of the Supreme Court of Mississippi, reversing a judgment awarding the writ of mandamus. The writ was applied for in the interest of Martha Lum, a child of Chinese blood, born in the United States, and was directed to the trustees of a high school district and the State Superintendant of Education, commanding them to cease discriminating against her and to admit her to the privileges of the high school specified, which was assigned to white children exclusively.

*Messrs. J. N. Flowers, Earl Brewer,* and *Edward C. Brewer* for plaintiff in error.

The white, or Caucasian, race, which makes the laws and construes and enforces them, thinks that in order to protect itself against the infusion of the blood of other races its children must be kept in schools from which other races are excluded. The classification is made for the exclusive benefit of the law-making race. The basic assumption is that if the children of two races associate daily in the school room the two races will at last intermix; that the purity of each is jeopardized by the mingling of the children in the school room; that such association among children means social intercourse and social equality. This danger, the white race, by its laws, seeks to divert from itself. It levies the taxes on all alike to

support a public school system, but in the organization of the system it creates its own exclusive schools for its children, and other schools for the children of all other races to attend together.

If there is danger in the association, it is a danger from which one race is entitled to protection just the same as another. The white race may not legally expose the yellow race to a danger that the dominant race recognizes and, by the same laws, guards itself against. The white race creates for itself a privilege that it denies to other races; exposes the children of other races to risks and dangers to which it would not expose its own children. This is discrimination. *Lehew* v. *Brummell*, 103 Mo. 549; *Strauder* v. *West Virginia*, 100 U. S. 303.

Color may reasonably be used as a basis for classification only in so far as it indicates a particular race. Race may reasonably be used as a basis. "Colored" describes only one race, and that is the negro. *State* v. *Treadway*, 126 La. 52; *Lehew* v. *Brummell, supra; Plessy* v. *Ferguson,* 163 U. S. 537; *Berea College* v. *Kentucky*, 133 Ky. 209; *West Chester R. R.* v. *Miles,* 55 Pa. St. 209; *Tucker* v. *Blease,* 97 S. C. 303.

*Messrs. Rush H. Knox,* Attorney General of Mississippi, and *E. C. Sharp* for defendants in error.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This was a petition for mandamus filed in the state Circuit Court of Mississippi for the First Judicial District of Bolivar County.

Gong Lum is a resident of Mississippi, resides in the Rosedale Consolidated High School District, and is the father of Martha Lum. He is engaged in the mercantile business. Neither he nor she was connected with the consular service or any other service of the government of China, or any other government, at the time of her birth.

She was nine years old when the petition was filed, having been born January 21, 1915, and she sued by her next friend, Chew How, who is a native born citizen of the United States and the State of Mississippi. The petition alleged that she was of good moral character and between the ages of five and twenty-one years, and that, as she was such a citizen and an educable child, it became her father's duty under the law to send her to school; that she desired to attend the Rosedale Consolidated High School; that at the opening of the school she appeared as a pupil, but at the noon recess she was notified by the superintendent that she would not be allowed to return to the school; that an order had been issued by the Board of Trustees, who are made defendants, excluding her from attending the school solely on the ground that she was of Chinese descent and not a member of the white or Caucasian race, and that their order had been made in pursuance to instructions from the State Superintendent of Education of Mississippi, who is also made a defendant.

The petitioners further show that there is no school maintained in the District for the education of children of Chinese descent, and none established in Bolivar County where she could attend.

The Constitution of Mississippi requires that there shall be a county common school fund, made up of poll taxes from the various counties, to be retained in the counties where the same is collected, and a state common school fund to be taken from the general fund in the state treasury, which together shall be sufficient to maintain a common school for a term of four months in each scholastic year, but that any county or separate school district may levy an additional tax to maintain schools for a longer time than a term of four months, and that the said common school fund shall be distributed among the several counties and separate school districts in proportion to the number of educable children in each, to be collected

from the data in the office of the State Superintendent of Education in the manner prescribed by law; that the legislature encourage by all suitable means the promotion of intellectual, scientific, moral and agricultural improvement, by the establishment of a uniform system of free public schools by taxation or otherwise, for all children between the ages of five and twenty-one years, and, as soon as practicable, establish schools of higher grade.

The petition alleged that, in obedience to this mandate of the Constitution, the legislature has provided for the establishment and for the payment of the expenses of the Rosedale Consolidated High School, and that the plaintiff, Gong Lum, the petitioner's father, is a taxpayer and helps to support and maintain the school; that Martha Lum is an educable child, is entitled to attend the school as a pupil, and that this is the only school conducted in the District available for her as a pupil; that the right to attend it is a valuable right; that she is not a member of the colored race nor is she of mixed blood, but that she is pure Chinese; that she is by the action of the Board of Trustees and the State Superintendent discriminated against directly and denied her right to be a member of the Rosedale School; that the school authorities have no discretion under the law as to her admission as a pupil in the school, but that they continue without authority of law to deny her the right to attend it as a pupil. For these reasons the writ of mandamus is prayed for against the defendants commanding them and each of them to desist from discriminating against her on account of her race or ancestry and to give her the same rights and privileges that other educable children between the ages of five and twenty-one are granted in the Rosedale Consolidated High School.

The petition was demurred to by the defendants on the ground, among others, that the bill showed on its face that plaintiff is a member of the Mongolian or yellow race, and

83583°—28——6

therefore not entitled to attend the schools provided by law in the State of Mississippi for children of the white or Caucasian race.

The trial court overruled the demurrer and ordered that a writ of mandamus issue to the defendants as prayed in the petition.

The defendants then appealed to the Supreme Court of Mississippi, which heard the case. *Rice* v. *Gong Lum,* 139 Miss. 760. In its opinion, it directed its attention to the proper construction of § 207 of the State Constitution of 1890, which provides:

"Separate schools shall be maintained for children of the white and colored races."

The Court held that this provision of the Constitution divided the educable children into those of the pure white or Caucasian race, on the one hand, and the brown, yellow and black races, on the other, and therefore that Martha Lum of the Mongolian or yellow race could not insist on being classed with the whites under this constitutional division. The Court said:

"The legislature is not compelled to provide separate schools for each of the colored races, and, unless and until it does provide such schools and provide for segregation of the other races, such races are entitled to have the benefit of the colored public schools. Under our statutes a colored public school exists in every county and in some convenient district in which every colored child is entitled to obtain an education. These schools are within the reach of all the children of the state, and the plaintiff does not show by her petition that she applied for admission to such schools. On the contrary the petitioner takes the position that because there are no separate public schools for Mongolians that she is entitled to enter the white public schools in preference to the colored public schools. A consolidated school in this state is simply a common school conducted as other common schools are conducted;

the only distinction being that two or more school districts have been consolidated into one school. Such consolidation is entirely discretionary with the county school board having reference to the condition existing in the particular territory. Where a school district has an unusual amount of territory, with an unusual valuation of property therein, it may levy additional taxes. But the other common schools under similar statutes have the same power.

"If the plaintiff desires, she may attend the colored public schools of her district, or, if she does not so desire, she may go to a private school. The compulsory school law of this state does not require the attendance at a public school, and a parent under the decisions of the Supreme Court of the United States has a right to educate his child in a private school if he so desires. But plaintiff is not entitled to attend a white public school."

As we have seen, the plaintiffs aver that the Rosedale Consolidated High School is the only school conducted in that district available for Martha Lum as a pupil. They also aver that there is no school maintained in the district of Bolivar County for the education of Chinese children and none in the county. How are these averments to be reconciled with the statement of the State Supreme Court that colored schools are maintained in every county by virtue of the Constitution? This seems to be explained, in the language of the State Supreme Court, as follows:

"By statute it is provided that all the territory of each county of the state shall be divided into school districts separately for the white and colored races; that is to say, the whole territory is to be divided into white school districts, and then a new division of the county for colored school districts. In other words, the statutory scheme is to make the districts outside of the separate school districts, districts for the particular race, white or colored, so that the territorial limits of the school districts need

not be the same, but the territory embraced in a school district for the colored race may not be the same territory embraced in the school district for the white race, and *vice versa,* which system of creating the common school districts for the two races, white and colored, does not require schools for each race as such to be maintained in each district, but each child, no matter from what territory, is assigned to some school district, the school buildings being separately located and separately controlled, but each having the same curriculum, and each having the same number of months of school term, if the attendance is maintained for the said statutory period, which school district of the common or public schools has certain privileges, among which is to maintain a public school by local taxation for a longer period of time than the said term of four months under named conditions which apply alike to the common schools for the white and colored races."

We must assume then that there are school districts for colored children in Bolivar County, but that no colored school is within the limits of the Rosedale Consolidated High School District. This is not inconsistent with there being, at a place outside of that district and in a different district, a colored school which the plaintiff Martha Lum, may conveniently attend. If so, she is not denied, under the existing school system, the right to attend and enjoy the privileges of a common school education in a colored school. If it were otherwise, the petition should have contained an allegation showing it. Had the petition alleged specifically that there was no colored school in Martha Lum's neighborhood to which she could conveniently go, a different question would have been presented, and this, without regard to the State Supreme Court's construction of the State Constitution as limiting the white schools provided for the education of children of the white or Caucasian race. But we do not find the petition to present such a situation.

The case then reduces itself to the question whether a state can be said to afford to a child of Chinese ancestry born in this country, and a citizen of the United States, equal protection of the laws by giving her the opportunity for a common school education in a school which receives only colored children of the brown, yellow or black races.

The right and power of the state to regulate the method of providing for the education of its youth at public expense is clear. In *Cumming* v. *Richmond County Board of Education,* 175 U. S. 528, 545, persons of color sued the Board of Education to enjoin it from maintaining a high school for white children without providing a similar school for colored children which had existed and had been discontinued. Mr. Justice Harlan, in delivering the opinion of the Court, said:

" Under the circumstances disclosed, we cannot say that this action of the state court was, within the meaning of the Fourteenth Amendment, a denial by the State to the plaintiffs and to those associated with them of the equal protection of the laws, or of any privileges belonging to them as citizens of the United States. We may add that while all admit that the benefits and burdens of public taxation must be shared by citizens without discrimination against any class on account of their race, the education of the people in schools maintained by state taxation is a matter belonging to the respective States, and any interference on the part of Federal authority with the management of such schools can not be justified except in the case of a clear and unmistakable disregard of rights secured by the supreme law of the land."

The question here is whether a Chinese citizen of the United States is denied equal protection of the laws when he is classed among the colored races and furnished facilities for education equal to that offered to all, whether white, brown, yellow or black. Were this a new question,

it would call for very full argument and consideration, but we think that it is the same question which has been many times decided to be within the constitutional power of the state legislature to settle without intervention of the federal courts under the Federal Constitution. *Roberts* v. *City of Boston,* 5 Cush. (Mass.) 198, 206, 208, 209; *State ex rel. Garnes* v. *McCann,* 21 Oh. St. 198, 210; *People ex rel. King* v. *Gallagher,* 93 N. Y. 438; *People ex rel. Cisco* v. *School Board,* 161 N. Y. 598; *Ward* v. *Flood,* 48 Cal. 36; *Wysinger* v. *Crookshank,* 82 Cal. 588, 590; *Reynolds* v. *Board of Education,* 66 Kans. 672; *McMillan* v. *School Committee,* 107 N. C. 609; *Cory* v. *Carter,* 48 Ind. 327; *Lehew* v. *Brummell,* 103 Mo. 546; *Dameron* v. *Bayless,* 14 Ariz. 180; *State ex rel. Stoutmeyer* v. *Duffy,* 7 Nev. 342, 348, 355; *Bertonneau* v. *Board,* 3 Woods 177, s. c. 3 Fed. Cases, 294, Case No. 1,361; *United States* v. *Buntin,* 10 Fed. 730, 735; *Wong Him* v. *Callahan,* 119 Fed. 381.

In *Plessy* v. *Ferguson,* 163 U. S. 537, 544, 545, in upholding the validity under the Fourteenth Amendment of a statute of Louisiana requiring the separation of the white and colored races in railway coaches, a more difficult question than this, this Court, speaking of permitted race separation, said:

" The most common instance of this is connected with the establishment of separate schools for white and colored children, which has been held to be a valid exercise of the legislative power even by courts of States where the political rights of the colored race have been longest and most earnestly enforced."

The case of *Roberts* v. *City of Boston, supra,* in which Chief Justice Shaw of the Supreme Judicial Court of Massachusetts, announced the opinion of that court upholding the separation of colored and white schools under

a state constitutional injunction of equal protection, the same as the Fourteenth Amendment, was then referred to, and this Court continued:

"Similar laws have been enacted by Congress under its general power of legislation over the District of Columbia, Rev. Stat. D. C. §§ 281, 282, 283, 310, 319, as well as by the legislatures of many of the States, and have been generally, if not uniformly, sustained by the Courts," citing many of the cases above named.

Most of the cases cited arose, it is true, over the establishment of separate schools as between white pupils and black pupils, but we can not think that the question is any different or that any different result can be reached, assuming the cases above cited to be rightly decided, where the issue is as between white pupils and the pupils of the yellow races. The decision is within the discretion of the state in regulating its public schools and does not conflict with the Fourteenth Amendment. The judgment of the Supreme Court of Mississippi is

*Affirmed.*