# WRIGHTEN v. BOARD OF TRUSTEES OF UNIVERSITY OF SOUTH CAROLINA et al.

### Civ. A. No. 1670.

District Court, E. D. South Carolina, Columbia Division.

July 12, 1947.

Harold R. Boulware, E. A. Parker, and W. F. Robinson, all of Columbia, S. C., and Thurgood Marshall and Robert L. Carter, both of New York City, for plaintiff.

John M. Daniels, Atty. Gen. of S. C., M. J. Hough and T. C. Callsion, Asst. Attys. Gen., of S. C., David W. Robinson, of Columbia, S. C., and Price & Poag, of Greenville, S. C., for defendants.

WARING, District Judge.

The plaintiff John H. Wrighten is a Negro resident and citizen of South Carolina over the age of 21, who has completed his preparatory schooling and also a college course at the Colored Normal, Industrial, Agricultural and Mechanical College of South Carolina (commonly referred to as "State College"). He received his bache-

lor's degree from that institution in May of this year and has the qualifications of education and character for admission to the University of South Carolina Law School or other graduate departments, save and except that he is a Negro and the University of South Carolina, including its law school, is, under the constitution, laws, customs and regulations thereunder in the State of South Carolina, open to persons of the white race only.

The State of South Carolina has established a system of segregation of races in schools and colleges. Article XI, Section 7 of the Constitution of the State of South Carolina (1895) provides: "Separate schools.—Separate schools shall be provided for children of the white and colored races, and no child of either race shall ever be permitted to attend a school provided for children of the other race."

Section 5377 of the Code of Laws of South Carolina is as follows: "Mixed schools unlawful.—It shall be unlawful for pupils of one race to attend the schools provided by boards of trustees for persons of another race." In 1887 the General Assembly of South Carolina provided (XIX Stats. at Large, p. 803): "That the University of South Carolina shall consist of the following departments, to be established exclusively for white students in the city of Columbia by the Board of Trustees, to wit * * * School of Law * * *." Section 5800 of the Code of Laws of South Carolina provides: "Establishment.—There shall be established within this State a Normal, Industrial, Agricultural and Mechanical College for the higher education of the colored youth of the State, and the said college shall be known as the Colored Normal, Industrial, Agricultural and Mechanical College of South Carolina."

State College has at present no law school and the Law School of the University of South Carolina situate at Columbia is the only law school in operation in this State.

The University of South Carolina (hereinafter referred to as "University") is owned by the State of South Carolina and is operated and maintained by the State for the purpose of providing higher educa-

tion for qualified persons of the white race, and is governed by a Board of Trustees named in accordance with the statute laws. In like manner, State College, which is situate at Orangeburg in this State, is owned, operated and maintained and is governed by another Board of Trustees, also named in accordance with the statute laws of the State. These two Boards are separate and distinct except that the Governor of the State is an ex officio member of both.

The defendants named in this cause are the Board of Trustees of the University and three named parties, namely, Norman M. Smith, who is the President of the University, Samuel L. Prince, who is the Dean of the Law School, and R. C. Needham, who is the Registrar. No official or member of the Board of State College is made a party.

The plaintiff being desirous of obtaining a legal education made application on July 2, 1946, to the Law School of the University, and this application being referred to the President, on July 6, Norman M. Smith refused plaintiff's admission, and subsequently plaintiff addressed another application to the Board of Trustees of the University, and this application was likewise refused. The refusal is based upon the fact that the plaintiff is a Negro and that the officials of the University are charged with the duty of operating the same for white persons only and that they have no right or authority under the constitution and laws of the State of South Carolina governing the University to accept the application of any one other than a white person.

■ This action is based upon Section 1 of the Fourteenth Amendment to the Constitution of the United States and Section 43 of Title 8 U.S.C.A. The jurisdiction of this court is derived from Subdivision 14 of Section 41 of Title 28 U.S.C.A. The prayer for declaratory judgment is based upon Section 400 of Title 28 U.S.C.A.

The complaint in this cause seeks a declaratory judgment and also injunctive relief, whereby the plaintiff will be declared entitled to a legal education and the trustees and officers in charge of the University

Law School ordered to grant him entrance so that he may obtain a legal education. In addition, the complaint asks for money damages for loss by reason of deprivations of his rights. It appears that while he made application in the summer of 1946, the plaintiff was not qualified to enter a law school until May 1947. Under these circumstances it seems that the matter of damages may well be deferred to ascertain what results are obtained by the granting of injunctive relief. I therefore determined on hearing this case on a pretrial conference to pass upon the equitable issues first, and the cause will be kept open, as will be more definitely hereinafter shown, for the determination of the matter of damages at an appropriate time should such arise.

In the presentation and arguments in this case many factors not strictly within the purview of the case were discussed. The justice or injustice, propriety or impropriety, of racial segregation in education was referred to, and the broad question of the matter of segregation of the races discussed. These matters are of immense interest and importance under the American constitutional guarantees and the American idea of liberty and equality. However, they are not pertinent to this case and will not here be discussed since under the pleadings and the agreements determined at a pretrial conference the basic question of segregation is not in issue. As a matter of fact, the right to segregate has been assumed or tacitly acknowledged by many of our courts, including the Supreme Court of the United States. See Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256; McCabe v. Atchison T. & S. F. R. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169; Gong Lum v. Rice, 275 U.S. 78, 48 S.Ct. 91, 72 L.Ed. 172; Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208.

Segregation in education may be considered as a necessity or a luxury, according to the geographical situs. Each community will have to decide whether it can or desires to sustain the financial burdens of segregation, and this must therefore be treated as a political rather than a judicial problem. That issue therefore will not be discussed herein but the case will be considered in the narrow confines of whether the plaintiff is entitled to admission to the University under the facts and circumstances of this case; and whether the State should be allowed a reasonable opportunity to provide legal educational facilities substantially equivalent and equal to that of the University at some other institution within the State.

A case arising in the State of Missouri has provided a clear chart for the decision of the basic rights of these parties. I refer of course to the case of Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208. In that case, Gaines, a Negro citizen and resident of the State of Missouri, attempted to obtain entrance into the Law School of the University of Missouri which was maintained solely for whites. There was another institution (Lincoln University) maintained by the State of Missouri for the higher education of Negroes. It had no law school, though there had been appropriations and authorizations to its officials to establish a law school when deemed advisable.. The State in the meantime provided an alternate remedy by providing funds for the assistance of Negro students desiring graduate education (such as law) in institutions situate outside of the borders of Missouri. The case finally reached the Supreme Court of the United States, which court held in clear tones that a Negro was entitled to the same educational facilities as a white person and that the State of Missouri could not force him to go outside and seek an education in another state, even though paid for by Missouri, but that he was entitled to equal privileges and opportunities with white students within the State. Subsequent to this decision it appeared that Lincoln University was directed by statute to open a graduate school and other cases arose as to whether the mere fact of preparation, subsequent to the decision, was sufficient. The courts allowed the State a reasonable time to make adequate preparation.

In argument and by briefs filed with me, counsel have cited a number of cases applicable to the questions here involved. I feel, however, that as above stated, the case of Gaines v. Canada, supra, really lays down all the law of the land, and the other

cases (some set out in a footnote [1]), while persuasive, are not in any way controlling. They relate not to the rights but to the remedies, and this being a cause of an equitable nature, the remedy is left somewhat to the sound discretion of the trial court, and in arriving at the same I have based it upon my own views of the rights, needs, exigencies, and equities in the instant case, guided and influenced by the experience and wisdom of other courts which have rendered opinions in similar matters.

So we arrive at the definite conclusion that the plaintiff, Wrighten, is entitled to the same opportunity and facilities afforded to whites for obtaining a legal education by and in the State of South Carolina. To what remedy is he entitled?

The General Assembly of South Carolina, in its general appropriation bills for the years 1945, 1946 and 1947, made certain appropriations and declarations which are pertinent in the consideration of this case. These are as follows:

From Act. No. 223 of Acts of the General Assembly for 1945, 44 Stat. at Large, p. 401:

"Section 16

"The Colored Normal, Industrial, Agricultural, and Mechanical College of South Carolina.

"For Maintenance ........... $130,000.00

*    *    *    *    *    *

"Provided, Further, That the Board of Trustees of the Colored Normal Industrial, Agricultural, & Mechanical College of South Carolina is hereby authorized to establish graduate Law and Medical Departments and such other departments as may be necessary to provide training in all lines of college activities for students attending this College, and to fix tuition fees for such courses commensurate with the costs thereof and in line with similar tuition charges at other state institutions."

From Act No. 601 of the Acts of the

General Assembly for 1946, 44 Stat. at Large, p. 1605:

"Section 16

"The Colored Normal, Industrial, Agricultural and Mechanical College of South Carolina.

"ITEM 1. For Maintenance..$150,000.00
"ITEM 2. For temporary housing ............. 15,000.00
"ITEM 3. For special repairs 5,000.00
"ITEM 4. Graduate school... 25,000.00

"Total .................$195,000.00

"Section 18

"The Colored Normal, Industrial, Agricultural and Mechanical College of South Carolina.

"Item 1. For maintenance....$463,000.00
"Item 2. Graduate and Law School ........ 60,000.00

Total .................$523,000.00

*    *    *    *    *    *

"Provided, Further, That the Board of Trustees of the Colored, Normal, Industrial, Agricultural & Mechanical College of South Carolina is hereby authorized to establish graduate Law and Medical departments and such other departments as may be necessary to provide training in all lines of college activities for students attending this College, and to fix tuition fees for such courses commensurate with the costs thereof and in line with similar tuition charges at other state institutions."

From the General Appropriations Act of 1947-1948 (House 240, Senate 276, Secretary State 312), approved 2 May, 1947, 45 St. at Large, p. 622:

*    *    *    *    *    *

"Provided, Further, That the Board of Trustees of the Colored, Normal, Industrial, Agricultural and Mechanical College of South Carolina shall use so much of the fund appropriated for Graduate and Law School, as is necessary to maintain and operate a law school during the coming fiscal year.

[1] Gaines v. Canada, 344 Mo. 1238, 131 S.W.2d 217; Bluford v. Canada, D.C., 32 F.Supp. 707; Bluford v. Canada, 348 Mo. 298, 153 S.W.2d 14; Michael v. Witham, 179 Tenn. 250, 165 S.W.2d 378; Sipuel v. Board of Regents of University of Oklahoma, 180 P.2d 135. See also University of Maryland v. Murray, 169 Md. 478, 182 A. 590, 103 A.L.R. 706.

"Provided, Further, That the Board of Trustees of the Colored, Normal, Industrial, Agricultural & Mechanical College of South Carolina is hereby authorized to establish and maintain graduate Law and Medical departments and such other departments as may be necessary to provide training in all lines of college activities for students attending this College, and to fix tuition fees for such courses commensurate with the costs thereof and in line with similar tuition charges as other state institutions."

The plaintiff takes the position that the proposal to establish a law school at State College has come only recently and is authorized by the appropriation act of the legislature of 1947, and points out that it is probable that there would not have been an adequate appropriation (perhaps not any appropriation) and certainly not a mandatory requirement to establish a law school at State College had not this case been brought. The plaintiff says, therefore, that his rights accrued when he brought his case that there was no law school in existence at that time save that at the University, and he insists that he is entitled to the strict relief demanded, namely, that he be admitted to the only law school in the State and the one supported by public funds. On the other hand, the defendants show that the State is making adequate preparation to take care of the plaintiff and others in like plight, and that it would have been futile to establish a law school at State College when there were no applications, and that a law school is made up as much by students as by professors and equipment, one being complementary to the other. They further point out that the State College officials have testified that they are going forward with plans and will have a going satisfactory law school in operation at the next session of the College in September 1947. We are here met with diametrically opposite views; the one that the plaintiff is entitled to enter the only law school in existence, and that the State College Law School is a theory rather than a condition; the other is that the State College Law School, while not actually in existence, is so far planned and arranged that it will be available to the plaintiff and others and will be an institution on a parity and in every way equal to the University Law School. As to the correctness of these two views, only time can tell.

The defendants lay particular stress upon the fact that no applications had been made for legal education at State College, and in fact only recently have inquiries been made. That may be plead as an excuse for delay but not as an excuse for denial. Where the State does not make preparations in advance to furnish facilities to which its citizens are entitled, it runs the risk of being forced to share the facilities furnished to members of one race with those of another race. That is a matter of policy and economy peculiarly within the realm of the discretion of the State officers but they should know that in the exercise of such discretion they necessarily run the risk of being called upon to furnish and perhaps share equal facilities to both races. The language of Chief Justice Hughes in the Gaines case, 305 U.S. at page 351, 59 S.Ct. at page 237, is completely applicable to Wrighten's case. "Here, petitioner's right was a personal one. It was as an individual that he was entitled to the equal protection of the laws, and the State was bound to furnish him within its borders facilities for legal education substantially equal to those which the State there afforded for persons of the white race, whether or not other negroes sought the same opportunity."

I would be unwilling to have the matter deferred if the establishment of the law school at State College was still discretionary and still only a possibility. However, I feel that due faith and deference must be given to the assurances of responsible State officials. They have made definite assurances that the law school will be in active operation, equipped, fitted and staffed, and ready for the giving of instruction on a complete parity with the University Law School.

■■ In the briefs and arguments, divergent views were taken as to the proposed law school at State College. Considerable time was expanded upon testimony and discussion of what were adequate facilities for a law school, as to how many

professors were needed, class room space and equipment, law library and other matters pertaining thereto. Discussions as to the advisability of large or small classes and various other details were attempted to be gone into. It seems to me that none of these matters is pertinent at this time. This Court cannot lay down any definite rule as to just how the State College shall set up a law school. Those matters are for the officials to whom are entrusted these duties. It is peculiarly a matter for the State to regulate and direct its own educational facilities. See Cumming v. Richmond County, 175 U.S. 528, 20 S.Ct. 197, 44 L.Ed. 262. The only restriction to be put upon it is the very broad and very definite restriction that *equal facilities* must be given to *white and colored*. If the proposed law school at State College places Negro students on a parity with white students at the University, then the constitutional rights of this plaintiff and others who desire legal education will have been satisfied and the State of South Carolina will have performed its duty as required by the Constitution of the United States and the decisions of its courts. And therefore the Order of this Court will provide merely that adequate legal education be furnished to Negroes in the State of South Carolina on a complete equality and parity with that furnished to whites, the place, manner and method of furnishing the same to be left to the sound discretion of the State officials, provided always of course that that discretion is exercised fairly and equitably.

I have therefore determined that the proper solution of this case is to leave the matter in an alternative situation and to provide that the demands of the plaintiff will be satisfied if the State College Law School is opened and adequate for its September 1947 term as represented; and if at that time the plaintiff and others who are qualified can and do obtain entrance to a law school at State College, satisfactorily staffed, equipped, and a going concern, and on a substantial parity in all respects with the services furnished at the University Law School, then the demands of the plaintiff will be adequately satisfied and no further action will be necessary by this Court. On the other hand, if that be not done completely and fully, then the plaintiff will be entitled to entrance at the Law School of the University. The third alternative is that the State furnish no law school education to any persons of either white or negro race.

In other words, the Order of this Court will provide that the State furnish to the plaintiff and others in like plight law school facilities equal to that at the University of South Carolina, either at the University itself, or State College, or any other satisfactory institution in the State, or furnish none to any one; and furthermore, I think it only fair and just, in view of all the circumstances, that the State of South Carolina be granted until the next law school semester which will open in the month of September 1947.

Formal findings of fact and conclusions of law and an appropriate Order in accordance with the foregoing views will be entered.