### BATTLE et al. v. WICHITA FALLS JUNIOR COLLEGE DIST. et al.

#### Civ. A. 588.

United States District Court
N. D. Texas, Wichita Falls Division.

Nov. 27, 1951.

Golden White, Age 22, femme sole, each and all are residents of Wichita County, Texas, domiciled in the Wichita Falls Junior College District and within the territorial limits of this court.

3. The Wichita Falls Junior College is predecessor to the Hardin Junior College; and the Hardin Junior College is created by State law, and is operated pursuant to State law.

4. That the Hardin Junior College is operated out of funds derived as follows:

a. State appropriations from public funds.

b. Local taxation levied against property of all citizens within the junior college district pursuant to State law.

c. Tuition and fees collected by the defendants pursuant to State law.

d. Endowments arising out of 60% of the net income from the Hardin Foundation.

e. Donations and gifts which, when made, become the property of the State of Texas.

5. That the business affairs of the defendant, Hardin Junior College, including administration and the admission of students to Hardin Junior College, are under the control, management and supervision of the defendants, John F. O'Donohoe, M. W. Blair, A. M. Miller, L. H. Cullum, A. R. Dillard, Jack Martin and Everett McCullough, who were at all times covered by this lawsuit the duly elected, qualified and acting Board of Trustees of Hardin Junior College; and that James B. Boren is the duly elected, qualified and acting President of the Hardin Junior College, C. T. Eskew is the duly elected, qualified and acting Dean of Administration, and Mrs. J. H. Jameson is the duly elected, qualified and acting Registrar of the Hardin Junior College, and that they are all and each of them Administrative officers of the State of Texas vested and clothed with power and authority to execute and administer all of the affairs of the Hardin Junior College and to exercise local autonomy in accordance with State law.

6. The Hardin Junior College is organized pursuant to the laws of the State of

———◆———

U. Simpson Tate and W. J. Durham, Dallas, Tex., for the plaintiffs.

C. C. McDonald, Thelbert Martin, Guy Rogers, all of Wichita Falls, Tex., for the defendants.

Price Daniel, Atty. Gen. of Texas, and E. Jacobson, Asst. Atty. Gen., amicus curiae.

ATWELL, Chief Justice.

No oral testimony was introduced. All of the facts were stipulated as follows:

1. The adult plaintiffs are resident citizens of Wichita County, Texas, and reside within the territorial limits of this court and within the Wichita Division of the court.

2. The following minor plaintiffs, Willie Fae Battle, infant, age 18, Helen Muriel Davis, infant, age 18, Carl Lawrence McBride, infant, age 18, Maryalen Virginia Menefee, infant, age 18, Wilma Jean Norris, infant, age 20, and the adult plaintiff,

Texas and that the Wichita Falls Junior College District is a corporate body and is made so pursuant to State law, and that the Hardin Junior College and the Wichita Falls Junior College District are instrumentalities of the State of Texas, and that the other defendants named herein, in administering the affairs of the Hardin Junior College and the Wichita Falls Junior College District, are discharging duties and functions under the general education laws of the State of Texas.

7. That public education in the State of Texas is a State function made so by law.

8. That the plaintiffs are members of the Negro race.

9. That the minor plaintiffs presented themselves August 15, 1951 with their applications properly executed and in good form, ready, willing and able to pay all tuitions, fees, and other expense necessary to admission, and possessed all of the qualifications for admission to Hardin Junior College except that they were Negroes.

10. That on August 16, 1951, they were denied admission by the defendants solely on the account of the race and color of the minor plaintiffs.

11. That only the following adult plaintiffs are taxpayers in the Wichita Falls Junior College District:

Emmett McBride—$2.68 per year,
Robert Norris —$1.48 per year.

12. That all white citizens are admitted to the Hardin Junior College with the same or similar qualifications of the minor plaintiffs.

13. That the Hardin Junior College owns the following physical plants and facilities.

Administration Building, consisting of offices, class rooms, gymnasium and auditorium. It owns a building which houses the book store; a building which houses the school of Graphic Arts; a building which houses the Department of Music; a building which houses Horologists and Library facilities. The buildings located on the Junior College ground consists of the Library, two Dormitories for women and the present Agricultural Building, and students of both Junior and Senior College have access to the buildings; two dormitories for men; the Business Administration Building.

14. That the value of approximate value of the physical plant and facilities owned by the Hardin Junior College is reflected on the balance sheet of Hardin Junior College as of August 31, 1951, shows current and fixed assets of $1,483,893.01. Liabilities, consisting of notes payable and bonds payable, total $429,500, leaving an excess of assets over liabilities of $1,054,393.01.

15. That the Hardin Junior College is located within the limits of the County of Wichita, Texas.

16. That Prairie View A & M College is 367 miles from the city of Wichita Falls, Texas. The fare from Wichita Falls by train is $10.15 and $8.57 by bus.

17. That Texas Southern University is located at Houston, Texas, 411 miles from Wichita Falls. The fare from Wichita Falls by train is $10.32 and $9.37 by bus.

18. The following departments are maintained at Hardin Junior College and are open to all white children, but are denied to Negro students because of their race and color;

Agriculture, Art, Biology, Business Administration, Education, English and Journalism, Foreign Languages, History, Political Science and Sociology, Home Economics, Mathematics and Engineering, Music, Nursing, Health and Physical Education, Physical Science, including Physics and Chemistry, Geology and Speech.

19. The defendants intend, in the future, to make the facilities at Hardin Junior College available only to white children and that all Negro applicants will be refused the use and enjoyment of the plant and facilities of Hardin Junior College, solely because of race and color and because the Constitution and Statutes of Texas provide for separate education of Negro and white children, saying that neither shall attend the schools of the other.

20. That there are no courses or educational facilities within the Wichita Falls Junior College District for qualified Negro junior college students which are equal or

substantially equal to the courses and facilities offered and made available to non Negro junior college students at the Hardin Junior College.

21. That on the faculty of Texas Southern University there are 146 members, 23 with Doctorate degrees.

Hardin Junior College has 24 professors with 16 members with full Doctorate degrees.

Texas Southern University has 111 professors with Masters degrees.

Hardin Junior College has 56 members on the faculty with Masters degrees.

Texas Southern University has 12 teachers with Bachelors degrees.

Hardin Junior College has 9 with Bachelors degrees.

Texas Southern University has 75 other employees.

Hardin Junior College has approximately the same number.

Texas Southern University had an enrollment of 2558 in 1950–51.

Prairie View A & M College for the school year 1950–51 had 131 members of its faculty and known as instructional officers. Of this number 13 held Doctorate degrees; 72 held Masters degrees; 30 held Bachelors degrees, and 16 held certificates of graduation—but no degrees.

22. The general tuition fee in the Hardin Junior College is the sum of $125 per school session; $30 activity fee; $5 laboratory fee (chemistry); $6 fee for use of typewriters, and the students pay in addition thereto for voice lessons, if they elect to take voice.

> Room and board at Hardin Junior College are as follows:
> Room: $15; board, $40 per month.

23. A student in the Hardin Junior College is not required to live and board on the campus and may attend Hardin Junior College by paying the general tuition fee, the activity fee, the laboratory fee and the other special fees for elective courses.

24. Students from other districts in the State of Texas, as well as from other states, may attend the Hardin Junior College, provided they are members of the white race and meet the other requirements and qualifications.

25. Students attending Prairie View A & M College are compelled to live on the campus and pay the following fees and expenses, which include room, board, tuition, student activity fee, laundry and books: $270 the first semester and $164.20 the second semester, a total for one regular session in the sum of $324.90.

26. That the students attending Texas Southern University are not furnished dormitory facilities and are required to pay for room and board off of the campus, and that $6 per week is the minimum amount paid for rent by such students and $1.50 per day for food off of the campus, or a total of $10.50 per week. That in addition to the above expenses, the following fees are required to be paid to the school, including tuition, special fees and student activity fees for the student attending a regular term at Texas Southern University, the sum of $94 to $105.

27. Hardin Junior College is one of several junior colleges in Texas that is maintained for education of white children. There has been established in Houston, Texas, an institution known as Texas Southern University and at Prairie View, Texas, an institution known as Prairie View A & M College, that provide equivalent physical facilities in every respect to the physical facilities of the Hardin Junior College for white children. No white child is permitted to enter these institutions. They are maintained solely for Negroes. The course of instruction, the buildings, the length of term, the courses offered and all other elements of the schools make them the equal of any junior college in Texas, particularly Hardin Junior College.

28. Both Texas Southern University and Prairie View A & M College are recognized as Class "A" colleges by the State Department of Education and the Southern Association of Colleges and Secondary Schools. Prairie View A & M College of Texas is likewise approved by the American College of Surgeons.

29. That no evidence additional to this agreement will be offered to or received by the court upon the trial of this cause.

30. Pleadings of the parties raise the following questions:

a. Whether a three-judge court should be convened to hear this controversy.

b. Whether this court should proceed to adjudicate the matter or stay its hands pending adjudication by the Supreme Court of Texas.

c. Whether the action of the defendants in pursuing the Constitution and the State Law of Texas is violative of the Constitution of the United States.

d. Whether the defendants' conduct in denying to minor plaintiffs the educational facilities in Hardin Junior College solely on account of race and color, while making said facilities available to all non Negro students under the same and similar circumstances and with similar qualifications, is a denial to the plaintiffs rights and privileges protected and guaranteed under the Federal Constitution.

The action of the authorities of the defendant, Junior College, is based upon Sec. 7 of Article 7 of the State Constitution, Vernon's Ann.St., which provides that "Separate schools shall be provided for the white and colored children, and impartial provision shall be made for both."

Article 2900 of the Revised Civil Statutes of Texas, 1925, provides, "All available public school funds of this State shall be appropriated in each county for the education alike of white and colored children, and impartial provisions shall be made for both races. No white children shall attend schools supported for colored children, nor shall colored children attend schools supported for white children. The terms, 'colored race' and 'colored children,' as used in this title, include all persons of mixed blood descended from negro ancestry."

■■ The right and power of the state to regulate the method of providing for the education of its youth at public expense, is clear. And the decision to separate the races is within the discretion of the state in regulating its public schools and does not conflict with the 14th Amendment. Gong Lum v. Rice, 275 U.S. 78, 85, 48 S.Ct. 91, 72 L.Ed. 172.

In Sweatt v. Painter, 339 U.S. 629, 70 S. Ct. 848, 94 L.Ed. 1114, as late as June 5, 1950, the United States Supreme Court in passing upon the University of Texas Law School case, in which a Negro sought admission, which was denied because he was a Negro, and was given the right to enter the State University because the law school provided for the Negroes in Texas, did not have the same facilities that the law school at the State University provided for its students. The facilities at the State Law School for whites had more professors, more students, and a larger number of volumes in the law library, moot court facilities, scholarship funds, and Order of the Coif affiliation, many distinguished alumni, and much tradition and prestige. And it held that the legal education offered to Sweatt was not substantially equal to that which he would receive if admitted to the University of Texas, and the equal protection clause of the 14th Amendment required that he be admitted. The case overruled the Court of Civil Appeals of Texas, and the Texas Supreme Court.

See also McLaurin v. Oklahoma State Regents, 339 U.S. 637, 70 S.Ct. 851, 94 L. Ed. 1149. Also, Wilson v. City of Paducah, D.C., 100 F.Supp. 116; City of Paducah v. Shelbourne, 341 U.S. 902, 71 S.Ct. 609, 95 L.Ed. 1341; Gray v. Board of Trustees, D. C., 100 F.Supp. 113; Pearson v. Murray, 169 Md. 478, 182 A. 590.

■ Authorities can be multiplied. The facts show that the privilege of attending the defendant college by those who reside within the Wichita Falls school jurisdiction, is much less expensive in both time and money than those who are forced to go from that jurisdiction several hundred miles to a like institution. That is a discrimination which the law does not allow.

The Negro did not come to the United States. He was brought here. He has grown in learning and in capacity and in the performance of the duties of citizenship. He pays taxes, he puts on the uniform of the Armed Forces. That is because he has had the benefit of his association with his white brethren. He walks the

same streets; he engages in the same businesses; he reads the same newspapers; he sings the same songs in his churches, and his churches are of the same denominations. It is, in truth, an united citizenship for an United States of America.

Decree must go for the plaintiffs requiring their admission to the defendant college.