**PITTS et al. v. BOARD OF TRUSTEES OF DE WITT SPECIAL SCHOOL DIST. No. 1 et al.**

Civ. No. 1856.

United States District Court E. D. Arkansas, W. D.

July 8, 1949.

976

W. Harold Flowers, Pine Bluff, Arkansas, for plaintiffs.

A. F. House, Little Rock, Arkansas and George E. Pike, De Witt, Arkansas, for defendants.

LEMLEY, District Judge.

This is a suit in equity brought by the plaintiffs, Frank Pitts, et al., Negro citizens and taxpayers residing within the territorial limits of the De Witt Special School District No. 1 of Arkansas County, Arkansas, against the members of the Board of Directors (termed in the bill "Board of Trustees") of said school district, the President and Secretary of said Board, and the Superintendent of Schools of said district, for the purpose of requiring the defendants to furnish elementary and high school facilities for Negro students in the district substantially equal to those furnished to white students.

The case was submitted on written briefs. Whereupon the Court filed herein the following findings of fact, conclusions of law and memorandum:

### Findings of Fact

1. The plaintiffs herein are Negro citizens and taxpayers of Arkansas County, Arkansas, residing in the City of De Witt, Arkansas, and within the boundaries of the De Witt Special School District No. 1; they have children between the ages of six and twenty-one years who are entitled to instruction in the public schools of said District.

2. The defendants herein are the Superintendent of Schools and the members of the Board of Directors of said school district. This action is brought against them in their representative capacities as Superintendent of Schools and Directors of the District.

3. The State of Arkansas maintains a public school system for persons between the ages of six and twenty-one years residing within the State. This system is administered by numerous independent school districts, of which the defendant district is one. Each of such districts has definite territorial boundaries and is charged with the responsibility of providing public school education for children between the ages of six and twenty-one years residing within its boundaries.

4. The defendant district maintains a public school system within an area embracing the City of De Witt, Arkansas, and certain rural territory in Arkansas County, Arkansas, parts of which rural territory have from time to time been annexed to and consolidated with the district as originally constituted.

5. In accordance with the provisions of the Constitution of Arkansas and certain statutes of that State, hereinafter referred to, which make it unlawful for children of the white and Negro races to attend the same school, the defendant district has undertaken to provide separate schools for white and colored children. White children

are not permitted to attend the schools maintained for colored children, and colored children, are not permitted to attend those maintained for white children.

6. The system of elementary schools being operated by the defendant district offers instruction in the first eight grades and consists of twelve separate schools located in various places within the district. Two of these schools are in the City of De Witt; the remaining ten are located in the rural territory served by the district. One of the elementary schools in De Witt is being used for the education of white children through the first eight grades, and the other elementary school in that city is used for the education of Negro children through the first eight grades. Of the ten elementary schools in the rural area of the district, seven are devoted to the education of white children exclusively and three to the education of Negro Children exclusively. Some of the white rural schools offer instruction in the first eight grades; others offer instruction through the first six grades only and when a student in the schools last referred to completes the sixth grade such student is transported at public expense to the City of De Witt for instruction in the seventh and eighth grades of the white elementary school in that city. The Negro schools in the rural area afford instruction in the first eight grades.

7. The defendant district maintains within the City of De Witt a high school for the instruction of white students in the ninth, tenth, eleventh and twelfth grades. This high school has been accredited by the Arkansas State Department of Education and given an "A" rating by said department. An "A" rating is the highest rating given to any school by said department.

8. The defendant district does not alone maintain a high school for Negro students, and prior to the beginning of the 1948-49 school year no high school facilities at all were provided by it for Negro students. Since September, 1948, however, the defendant district has arranged with Independent School District No. 70 of Arkansas County, Arkansas (hereinafter referred to as Immanuel School District) for the high school education of its Negro students who have completed the first eight grades of school and who desire to attend high school; such students are transported at public expense to the said Immanuel High School, maintained as aforesaid by School District No. 70. Immanuel High School is a Negro high school which offers instruction in the ninth, tenth, eleventh, and twelfth grades. It has been accredited by the Arkansas State Department of Education and is rated by that department as a grade "C" high school. Grade "C" is the lowest accredited rating given by the said department to any high school in the state. Immanuel High School is situated eight and one-half miles northeast of the City of De Witt, Arkansas, and is outside of the boundaries of the defendant district.

9. During the school year 1948-49, there were only nine Negro students residing within the boundaries of the defendant district who desired instruction at the Immanuel High School and only seven of these attended Immanuel throughout the school year. There are, however, other Negro students living within the district who have completed their eighth grade education in the public schools and are eligible to attend high school but do not attend the Immanuel High School; these students are attending various private high schools out of the district at their own expense or at the expense of their parents. Some of these private schools are not accredited and are not as good schools as Immanuel. There are approximately thirty Negro students either attending or eligible to attend high school who reside within the defendant district, as compared to approximately three hundred three white students in average daily attendance at the De Witt High School.

10. It is not feasible either from an educational or an economic standpoint to establish a high school within a district having less than three hundred fifty "enumerates" ("enumerates" being persons between the ages of six and eighteen years of age). There are not exceeding one hundred fifty Negro enumerates residing in the defendant district, and it is not feasible and impractical for the defendant district to

establish a Negro high school within its boundaries. Such a high school, if established, would not be recognized by the State Department of Education as a high school; it would not be eligible to be accredited by the said department and the district would receive no teacher-salary aid therefor from said department.

11. Arkansas County is a predominantly agricultural area; its chief crop is rice; in the cultivation of rice there is small demand for Negro labor. As a result of this condition the Negro population of the county is not evenly distributed throughout its area, but is concentrated in widely scattered settlements. For this reason, and due to the fact that less than three hundred fifty Negro enumerates reside in any one school district, it is necessary that several school districts pool their efforts in the providing of high school facilities for Negro students. According to surveys made by the State Department of Education, Arkansas County should have two Negro high schools, one at Stuttgart in the northern section of the county and the other in the Immanuel community. When the distribution of Negro population in the southern section of the county, including that of the defendant district, is considered, Immanuel is the logical place for the establishment and maintenance of a Negro high school.

12. Immanuel has been a high school for the past twenty years. It was originally established by the White River Association of the Baptist Church, an association composed of a number of Negro Baptist Churches, and in years gone by the Negro Baptist Church made material contributions toward the maintenance and operation of the Immanuel High School. Approximately twenty years ago, however, the White River Association deeded two acres of its land at Immanuel to the Directors of Independent School District No. 70, for school purposes, in order to obtain a grant from the Rosenwald Fund to build a Negro school. One of the requirements for a Rosenwald grant at that time was that the school building and grounds be publicly owned and that the building when completed be operated as a public school. Immanuel High School at the present time is a public school, is not associated with the Baptist Church or any other religious denomination, and is supported entirely by public funds.

13. Prior to 1947, Immanuel was not an accredited high school. It obtained an accredited rating during that year and has retained it since that time. As stated, it is a grade "C" high school but its facilities can be expanded and improved until it obtains a grade "A" rating; the minimum period within which this could be done is three years. The curriculum offered at Immanuel consists of instruction in English, algebra, plane geometry, trigonometry, civics, American government, world history, general science, biology, psychology, vocational agriculture, and home economics. A graduate from the Immanuel High School is eligible from an educational standpoint to enter any college of the State of Arkansas.

14. Prior to 1948, there was no material demand for the furnishing of high school facilities within the defendant district to Negro students. In 1948, a group of Negro citizens, including some if not all of the plaintiffs in this case, began to request the directors of the district to provide their children with high school facilities within the district and in the City of De Witt. Their specific request was that the facilities of the Negro elementary school in De Witt be expanded by adding one grade a year until it had been brought up to a high school level. In March, 1948, a mass meeting was held in De Witt, attended by Negro citizens and by the members of the Board of Directors of the defendant district; at this meeting the request in question for high school facilities was discussed. The mass meeting was addressed by Dr. Ed McCuistion, Director of Negro Education for the Arkansas State Department of Education. Dr. McCuistion explained to those attending the meeting that it was not feasible to establish a Negro high school in De Witt, and suggested that the facilities of the Immanuel High School be improved and expanded and that Negro students within the De Witt School District be transported to Immanuel for their high school education. At this mass meeting the Board of Directors of the defendant dis-

trict agreed to add a new teacher to the faculty of the Negro elementary school at De Witt, which was later done, and further agreed to acquire and set up an additional building at the Key school (in this connection, the building obtained at Camp Robinson and hereinafter referred to in Finding of Fact No. 18 was supplied). The mass meeting adjourned harmoniously and it was the opinion of the Superintendent of Schools of said district, who was in attendance upon said meeting, that the suggestion of Dr. McCuistion with respect to the use of the facilities at Immanuel High School was acceptable to the Negro citizens of the district attending said meeting. Dr. McCuistion was of the same opinion. No protest of said plan was made to the school authorities at said meeting or thereafter, until the institution of this suit. It was following this meeting that arrangements were made with the Immanuel district for the education of Negro high school school students residing within the defendant district. Had the proposal of the Negro citizens to establish a high school in De Witt, by the device of adding one grade a year to the existing Negro school facilities in that city, been accepted by the board of directors, it would have taken a minimum of four years to have brought the school to a high school level with a grade "C" rating, and a minimum of three years thereafter for said school to have become eligible for a grade "A" rating from the State Department of Education.

15. As stated, there are now not exceeding thirty Negro students residing within the defendant district who are eligible to attend high school. Three additional Negro students completed the eighth grade during the term ending in May, 1949. Thus, there are not exceeding thirty-three Negro students residing within the boundaries of the defendant district who are attending high school or who are eligible to attend high school.

16. Immanuel High School is eight and one-half miles from the City of De Witt. This is not an unreasonable distance for the transportation of such students from De Witt to Immanuel. A considerable number of white students within the defendant district are transported to school for great-

er distances than eight and one-half miles. The Negro high school students residing in the district who have been transported to Immanuel during the past year have been carried in a converted Army ambulance which was originally given to the district by the United States Government and which was used by the district for two years in the transportation of white students. During the school year 1947–48 this converted ambulance was used to transport nineteen white students to school for a materially greater distance than that between De Witt and Immanuel. When the district first began to use this vehicle in the transportation of students to Immanuel no driver was employed; it was delivered to one of the Negro students by whom it was driven, the school district paying for gasoline, oil, tires and repairs. This vehicle is no worse than one now being used by the district in the transportation of white students, but from the admission of counsel for the defendant district and from an inspection of the photograph of the vehicle, in evidence, the Court finds that it is not desirable for the transportation of students. The Court also finds that the arrangements made by the district with respect to a driver of said vehicle are not proper.

17. The only substantial inconvenience which might be suffered by Negro high school students in being required to attend the Immanuel High School is that if any of them desire to attend a college other than one of the State of Arkansas such student might be required to take an entrance examination. There has been no showing made to the effect that any of the Negro students now attending high school at Immanuel, or eligible to attend high school, contemplate attending a college other than one of the State of Arkansas, or that such student would not be able to pass an entrance examination if so required.

18. The facilities of the Negro elementary school in De Witt are not substantially equal to those of the white elementary school located in that city. In this connection, there were seventy-eight Negro students in average daily attendance at the Key School during the school year just past as compared to approximately four hundred fifty white elementary students in average

daily attendance at the white elementary school.

The Negro elementary school, commonly known as "Key" school, consists of a three-room, frame building and of a pre-fabricated one-room building formerly located at Camp Robinson, Arkansas, and purchased by the district from the government in 1948 and thereafter dismantled at Camp Robinson and reassembled at Key School. This building is used as an auditorium and lunch room.

The white elementary school at De Witt has sanitary toilet facilities connected with the city sewer, and drinking fountains both inside and out. The Key school, on the other hand, does not have any sewer connections and is served by outdoor pit toilets. It is located 850 feet from one end of the De Witt sewer system. The Key school does not have water connections inside of the building. Its only water facilities are a hydrant and drinking fountain, both outside of the building.

For some time the De Witt Special School District has been engaged in the building of a new and modern building for its elementary white school. This building is not far from completion and when completed will cost an estimated $140,000. The Key School, including its two buildings, has a valuation of $6,000.

The desks in one of the rooms of the Key School are worn and outmoded. Likewise, the furnishings in some of the rooms of the white elementary school at De Witt are worn and outmoded, but, on the whole, in order to bring about substantial equality, the desks in question in the Key School should be replaced.

A term of nine months each year is had at the white elementary school in De Witt, whereas that of the Negro elementary school is only eight months.

19. The salaries of the Negro teachers and white teachers in the elementary school system of the defendant district are substantially equal and are based upon training and experience. The qualifications of the Negro teachers in the elementary school are substantially the same as those in the white schools.

20. In order to eliminate the discrepancies between the Negro elementary school and the white elementary school, other than in the physical plants thereof, it is necessary that the length of the school terms of said schools be equalized; that the Negro elementary school be furnished with sewer and indoor water facilities; and that approximately forty desks therein be replaced with better desks.

21. There is no evidence to the effect that plaintiffs or any of the other colored patrons or citizens of the De Witt Special School District protested or took any steps to prevent the erection of the new elementary white school building now in the process of erection.

22. At the present time the defendant district has a bonded indebtedness of $160,000. Its financial condition otherwise is poor and it is unable from a financial standpoint to equalize to any material extent the discrepancies between the valuation of the physical plant of the De Witt white elementary school and the Negro elementary school, Key school, in said city.

23. The defendant district maintains a nine months' term for the high school in De Witt whereas Immanuel High School maintains an eight months' term only, and it will be necessary that this discrepancy be eliminated either by the increasing of the length of the term at Immanuel or decreasing the length of the term of the white high school in De Witt.

## Conclusions of Law

1. That the court has jurisdiction of this cause and of the parties thereto.

2. That plaintiffs are entitled to a declaratory judgment to the effect that Negro children between the ages of six and twenty-one years residing within the boundaries of De Witt Special School District No. 1 of Arkansas County, Arkansas are entitled to public educational facilities substantially equal to those provided for white children within said age group and residing within the boundaries of said school district, and that it is the duty of the defendants in this case and their successors in office to provide such facilities.

3. That in view of the court's findings of fact, hereinbefore set forth, plaintiffs are entitled to a declaratory judgment to the effect that the educational facilities now provided for Negro children of school age residing within the boundaries of De Witt Special School District No. 1 of Arkansas County, Arkansas, are not substantially equal to the facilities furnished to white children of school age residing within said school district, and that the defendants and their successors in office must proceed to equalize said facilities within a reasonable time either by improving the educational facilities for Negro students or by reducing the facilities offered to the white students.

4. That plaintiffs are further entitled to an injunction directed against the defendants and their successors in office, which injunction should contain the following commands and prohibitions, to-wit:

a. That the length of school terms in the De Witt Key School for Negroes and in the Immanuel High School be brought into equality respectively with the school terms of the white elementary and high schools in the City of De Witt; that is to say, that the terms in the Negro schools must be lengthened or the terms in the white schools must be shortened so that they will be of the same duration; this provision of the injunction should be complied with by the beginning of the 1949–50 school term.

b. That the following improvements to the physical plant of the De Witt Key School be made with dispatch and within a reasonable time:

(1) A connection made with the sewer system of the City of De Witt, and modern and adequate automatic flush toilets installed.

(2) One or more indoor drinking fountains installed.

(3) New desks obtained for the class room with respect to which testimony was taken during the trial of the case and a photograph introduced in evidence; this class room is located in the Key School proper.

c. That a reasonably safe and comfortable vehicle be obtained for the purpose of transporting pupils from the defendant district to the Immanuel High School, and that a regular driver be employed to operate said vehicle.

d. That the defendants and their successors in office be required to take steps in cooperation with the Board of Directors of Immanuel School District No. 70 of Arkansas County, Arkansas, to bring within a reasonable time the accreditation of the Immanuel High School up from a grade "C" rating to a grade "A" rating. That if it be found impossible to raise the rating of the Immanuel High School from grade "C" to grade "A" within a reasonable time, the defendants and their successors in office be required to make other arrangements whereby Negro students may be served with high school facilities reasonably accessible to them and of substantial equality with those serving white high school students.

e. That, subject to the proviso hereinafter set forth, the defendants and their successors in office be permitted to complete the construction of the new elementary school building for white students in the City of De Witt, but that after its completion they should be restrained from constructing any additional buildings, structures, or facilities for the education of white students and from making any capital improvements upon existing structures, buildings, or facilities, including the new elementary school building when completed, for the education of white students until such time as the physical plant of the Negro elementary school is improved and brought up to a status of substantial equality with the physical plant of the white elementary school, taking into consideration the comparative average daily attendance of the students of each race in said elementary schools together with any other pertinent factors involved. Provided: That if additional funds are raised, by a bond issue or otherwise, for the completion of the white elementary school building, the defendants and their successors in office should be restrained from spending all of such additional funds upon said white elementary school building, and should be required to pro-rate such funds between the white elementary school system and the Negro elementary school system on the basis of the comparative average daily at-

tendance of the students of each race in said elementary schools, the amount prorated to the white system to be used solely for the completion of said white elementary school building, and that allocated to the Negro elementary school system to be used to improve the physical plant of that system.

f. That the defendants and their successors in office be restrained from utilizing or expending any funds coming into their hands from henceforward, from whatever source derived, in such a manner as to discriminate against the Negro school system or the Negro students of the said school district.

### Opinion

This is a bill in equity brought by the plaintiffs, who are Negro citizens and taxpayers residing within the boundaries of De Witt Special School District No. 1 of Arkansas County, Arkansas, against the members of the board of directors of said school district, the President and Secretary of said board, and the Superintendent of Schools of said district, for the purpose of compelling an equalization of elementary school facilities for Negroes and whites within the district, and for the further purpose of requiring the defendants to furnish high school facilities for Negro students in the district substantially equal to those furnished to white students. While the suit is brought against the members of the board of directors of the district (in their official capacities) for convenience reference will be made to such defendants as "the defendant district," particularly in view of numerous references herein to another school district.

The prayer of the complaint is for both declaratory and injunctive relief. Specifically, the plaintiffs ask the court to "adjudge and decree and declare" the rights and legal relations of the parties to the "subject matter here in controversy" in order that such declaration and decree shall have the force and effect of a final judgment or decree; they further pray that the court enter a judgment, order, or decree declaring that "the policy, custom, and usage of the defendants and each of them in maintaining and furnishing schools and school facilities for Negro children between the ages of six and twenty-one in the City of De Witt and the De Witt Special School District No. 1 which are inferior to those furnished to white children in said city and district is a denial of the equal protection of laws guaranteed by the Fourteenth Amendment to the Constitution, and is therefore, unconstitutional and void"; finally, they pray for a permanent injunction restraining the defendants and their successors in office "from maintaining a policy, custom, and usage of furnishing schools and school facilities for Negro children between the ages of six and twenty-one in the City of De Witt and in the De Witt Special School District No. 1 which are inferior to those furnished to all other children of said age group in said city and district."

By its answer the defendant district denies that inequalities exist between the white and Negro school systems maintained by it, and that there has been any policy, usage, or custom pursued by it in maintaining inadequate and inferior schools and school facilities for Negro children; it denies that the plaintiffs or their children have suffered any deprivation of rights guaranteed to them by the Fourteenth Amendment to the Constitution of the United States, and denies that they have been damaged by any such alleged wrongful or illegal policy, custom or usage pursued by them.

Amendment XIV, Section 2, of the Constitution of the United States, upon which plaintiffs base their case, reads in part as follows: "No State shall make or enforce any law which shall * * * deny to any person within its jurisdiction the equal protection of the laws."

The public school system of the State of Arkansas is provided for by Article 14 of its Constitution of 1874, Section 1 of which article reads as follows: "Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free schools whereby all persons in the State between the ages of six and twenty-one years may receive gratuitous instruc-

tion." Section 4 of said Article provides that the supervision of public schools and the execution of laws regulating the same shall be vested in such officers as may be provided for by the General Assembly.

Arkansas, by statute, 7 Ark.Stats.1947, 80-509, has vested the management of local schools in independent school districts; this statute requires the board of directors of each district to "establish separate schools for white and colored persons."

■ Hence, under the constitution and laws of the State of Arkansas, Negro students are entitled to school facilities equal to those furnished to the white students. It is recognized, however, that administration of the laws at the local level may be such as to discriminate against one of the races in violation of the "equal protection" clause of the Fourteenth Amendment even though the laws themselves are, as here, fair and non-discriminatory on their face. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.

■ The Supreme Court of the United States has held that Negro students are entitled, under the Fourteenth Amendment, to public educational facilities substantially equal to those furnished to white students. State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Sipuell v. Board of Regents of the University of Oklahoma, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 1768. This is the law of the case and presents no difficulty; difficulty does arise, however, in its application to the particular facts which have been developed here.

There is little, if any, dispute as to the ultimate facts in this case. At the present time the school facilities furnished by the defendant district to Negro students are not substantially equal to those furnished to the whites, and to this end that constitutional requirements may be met, the district will have to eliminate the existing inequalities and bring the facilities for Negro students up to a plane of substantial equality with those furnished to white students, even though this has to be done at the expense of the system devised for the whites.

The correctness of this proposition was, we take it, admitted by council for the district in the course of the trial of the case, and likewise in the brief field in its behalf. The real dispute arises out of the request of the district for a reasonable time in which to make needed improvements in its Negro school system, and the demand of the plaintiffs that such system be brought into substantial equality with the white system, immediately.

■ The instant suit is one in equity, and the bill is addressed to the court sitting as a court of equity. Hence, the court has a wide discretion in determining what relief is proper and in prescribing the time within which such relief must become effective. The case at bar is not the only one of this nature upon the court's docket and, in connection with our discussions and holdings herein, it should be borne in mind that each of these cases stands on its own peculiar facts; relief which might be proper in one case might not be sufficient in another, and the length of time allowed to a district within which to bring about an equalization of educational facilities which might be reasonable in one case could be unreasonable in another.

Taking up first the proof in regard to the elementary school system of said district, no evidence has been introduced or no contention has been made to the effect that there is any discrepancy between the white and Negro schools outside of the City of De Witt, and the only elementary schools involved in this case are the De Witt white elementary school on the one hand and the De Witt Negro elementary school, commonly known as "Key" School, on the other.

The Complaint alleges that the Key School is unsafe, insanitary, and inadequate. When the school is viewed alone these allegations cannot be sustained. Its main building consists of two rooms and is of frame construction, painted white. It was built with Rosenwald funds in 1936; a photograph of this building was introduced in evidence from which it appears that it was well constructed when built, and is in good condition now. In addition to the main building, and immediately adjacent to it, is another building, described as a "war surplus" building, which is used as an

auxiliary class room and can be used as an auditorium. This structure is also in good condition.

There were seventy-eight Negro students in average daily attendance at Key School during the school term just past as compared to approximately four hundred fifty white students in average daily attendance at the De Witt white elementary school. The students at Key School were instructed by three teachers; no evidence was introduced tending to show that the pupils were overcrowded or that any teacher was burdened with an undue pupil load. Some contention was made that the teachers were not as well qualified as the teachers in the white elementary school, but no substantial evidence was introduced supporting this contention. No evidence was introduced by either side as to the curriculum taught at the Key School, and the presumption is that it is substantially the same as that taught at the white school.

When the Key School is compared with the white elementary school, however, material differences between the two are apparent. Some of these differences are comparatively minor and can be eliminated within a reasonably short time and with a relatively small outlay of money. Other differences are more deep seated, and their elimination will necessarily involve considerable time. The white school has modern sewer facilities, while at the Key School outdoor pit toilets only are provided. This condition can be eliminated by running a sewer line eight hundred fifty feet from Key School so as to connect with the sewer line of the City of De Witt, and by the installation of the toilet facilities inside of the building. Key School has no indoor drinking fountain; its fountain is outside of the school building; The white school has both indoor and outdoor fountains. This inequality can be taken care of at the same time that toilet facilities are provided at Key School. The furniture in one of the rooms of Key School is outmoded and in bad repair. It should be replaced. Finally, an eight month school term is held at Key School while a nine month term is had at the white elementary school. Either the term of the colored school should be lengthened or that of the white school shortened.

The most serious difference between Key School and the white elementary school involves the fact that there is now approaching completion at De Witt a new elementary school building for white students which, when completed, will have a value of approximately $140,000, whereas the physical plant of the Key School has a value of around $6,000 only. This new building will, no doubt, be in all material respects a modern and up to date elementary school building. The discrepancy in value between the two plants, notwithstanding the fact that the students in average daily attendance at the white elementary school greatly exceed those in such attendance at Key School, is shocking. While it is true that the camparative excellence of two schools cannot by any means be measured by the value of their respective physical plants alone, still where, as here, there is such a great discrepancy in value between the two systems and no showing that the smaller possesses intangible attributes tending to offset the disparity in value, it is clear that the two are not substantially equal.

The building program of the defendant district was launched in 1948 by the floating of a bond issue; the program was devoted almost entirely to the construction of the new white elementary school, and, according to the testimony of the Superintendent of Schools, the only improvement planned for the colored elementary school was the acquisition of the "war surplus" building, above mentioned, which was purchased, moved, and reassembled at a total cost to the district of $2,600. The proceeds of the original bond issue proved insufficient to carry out the projected program, and, in November of 1948, an additional $50,000 in bonds was authorized by a vote of a majority of the electors of the district; this bond issue, or more properly the tax levied to retire it, was held invalid by the Supreme Court of Arkansas on the ground that the election by which the tax was levied was held on a day not authorized by law. Adams v. De Witt Spec. School Dist. No. 1, 218 S.W.2d 359.

Doubtless a new white elementary school was needed at De Witt, but the Board should not have constructed a luxurious building for the white school while prac-

tically ignoring the colored school, relegating it to a physical plant possessing the minimum essentials of an urban school. The board should have calculated the amount of money needed for building purposes and then allocated it fairly between the white system and the Negro system, taking into consideration the needs and numbers of the students of the respective races in attendance at said schools. There is little, however, that can be done about that at this time; the new building is approaching completion and will be ready for use this fall. We are faced with an accomplished fact. The plaintiffs in this case, although they must have known that the new building was in contemplation, took no steps to enjoin its construction or to secure for the colored school any part of the proceeds of the bond issue above mentioned. They stood by and permitted the contracts for the building to be let, construction commenced, and the work carried forward practically to completion. They now ask the Court to order the district to give to their children, immediately, an elementary school equal in all material respects to the new school for the white children.

▮ We do not feel called upon to go so far. The financial condition of the district is bad, and it has no funds available at present whereby the physical plant of Key School can be improved beyond the point necessary to comply with the requirements above outlined for the installation of sewer facilities, drinking fountains, and better desks. The district can not be compelled to raise funds; it has no control over the taxing machinery of the county or state. If the district has no money, and its Superintendent says it has none, it would be vain for the court to order the directors to build a new school building for the Negro students. The only way the district can raise funds for building purposes is to float another bond issue to be retired by an ad valorem tax on property within the District and this tax would have to be approved by the voters. Adams v. De Witt Special School Dist. No. 1, supra, and Ark.Const. of 1874, Amendment 40, adopted November 2, 1948. We have no right to order the Directors to propose such

a bond issue, and, of course, have no power to compel the people to approve a tax to retire additional bonds. The relief to be given in this situation will be prospective in its operation. The defendants will be restrained, after the completion of the building now under construction, from erecting any more buildings or making any capital improvements on existing buildings or facilities in the white school system, including the new elementary building after it is completed, until such time as the physical plant of the Negro elementary school system has been brought up to a state of substantial equality with the white system, taking into consideration the comparative number of the students of each race attending said schools, and directed that from henceforth all funds coming into the hands of the district, from whatever sources derived, must be spent by it fairly and without discrimination.

While the completion of the new elementary school for white students will be permitted, if it can be done, such permission will be qualified as follows: If it becomes necessary for the district to raise additional funds for the completion of the building, either by selling bonds or otherwise, any funds raised by it must be pro-rated between the two races. That is to say, the board will not be permitted to raise more funds merely for the purpose of completing the new white school. If more funds are raised, there must be spent upon the Negro elementary system the proportionate part thereof to which said system is entitled based upon the number of Negro elementary students in average daily attendance at the Negro elementary school in the district as compared to the number of white elementary students in such attendance at the white elementary school.

▮ With respect to plaintiffs' complaint in regard to the high school facilities for Negro students in said district, their main contention at the hearing, as we understand it, was that they were entitled to a high school in the City of De Witt, whereas at the present time high school facilities are being furnished them at the high school of Immanuel School District No. 70, outside of the district.

The defendant district maintains no Negro high school within its borders, and according to the testimony of Dr. Ed McCuistion, Director of Negro Education for the State Department of Education, there are too few Negroes living within the district to justify the construction of a high school for their children. Dr. McCuistion's conclusion has been reached aside from financial considerations, and, as we construe his testimony, it is to the effect that it would not be practicable to have a Negro high school in the district even if the district had sufficient funds to build, equip and operate such a school. According to the testimony of one of the plaintiffs, there are only about thirty Negroes in the district eligible to attend high school. In this connection, there were approximately three hundred three white students in average daily attendance at the De Witt white high school during the last session, and the Superintendent of Schools testified that only three Negroes were promoted from the eighth grade at the end of the last school term.

Up until a few years ago there was no real demand among the Negroes in the defendant district for high school facilities for their children. In 1948, however, a petition signed by numerous Negroes and whites was presented to the school board asking for the establishment of a Negro high school at De Witt. Plaintiffs lay stress on this petition, but a study of it shows that it contained a statement to the effect that the signers thereof "understood" that there were going to be established two Negro high schools in Arkansas County and that one of these high schools was definitely going to be located at Stuttgart. The prayer of the petition was that the other high school be located at De Witt. We are of the opinion that the signers of the petition thought that another Negro high school was to be established in any event, and that the only question involved was its location. There is no evidence to the effect that any of the signers were at the time familiar with the objections to having a Negro high school at De Witt brought out in Dr. McCuistion's testimony in this case or that they took into consideration the existing facilities at Immanuel

when they signed the petition. Shortly after the circulation of this petition, a mass meeting was held which was attended by some if not all of the plaintiffs, by their attorney, and by the Superintendent of Schools and the then members of the board of the defendant district. At this meeting it was proposed by the Negroes that a high school be established for their children by the device of adding one grade a year to the Negro elementary school in De Witt until it reached full high school status. Dr. McCuistion addressed the meeting and explained that it was not feasible to have a Negro high school at De Witt, and urged that use be made of the facilities available at the Immanuel School, set out in our Findings of Fact. The meeting broke up on a note of harmony and, while there is a divergence of opinion as to whether or not the Negroes appeared satisfied at the conclusion of the meeting, no protest was lodged by them, nor was any further demand made upon the Board to establish colored high school facilities at De Witt until this suit was filed.

After the mass meeting, the Board arranged with the Directors of Immanuel School District No. 70 for the education of the Negro high school students residing in the De Witt District. Nine Negro students commenced going to Immanuel in the fall of 1948, and seven continued their attendance throughout the year; they were transported to Immanuel, which is eight and one-half miles northeast of De Witt, at public expense, and the facilities of Immanuel are still available to them and to others similarly situated.

According to the testimony of Dr. McCuistion and other witnesses, credited by the Court, Immanuel School is located at the logical place in southern Arkansas County for a Negro high school, when the distribution of Negro population in that section of the County is considered. Immanuel has been a school center for many years; the high school there is a going concern, and it is an accredited high school. Under the circumstances, we would not be justified in directing the establishment of a separate Negro high school within the defendant district. In our opinion the interests of Negro education will be best pro-

moted by the maintenance of a consolidated Negro high school serving several districts; and it is clear that Immanuel is the place where such consolidation should be centered. This question has been carefully considered by the State Department of Education and by the local school authorities, and even if we disagreed with their expert opinion, which we do not, we would be reluctant to substitute our judgment for theirs.

In connection with the proposal of the Negro patrons that a grade a year be added to the Key School until instruction in twelve grades is offered, little need be said. According to Dr. McCuistion's testimony, it would take four years for the Key School to become eligible for accreditation as a high school if this proposal were adopted, and the school would then be eligible, if it could be accredited at all, for a grade "C" rating only, which rating the Immanuel School now possesses. The arrangement now in effect is much more efficient and actually more advantageous to the Negroes than the proposal which they themselves made.

The real problem as to the high school facilities is that Immanuel School has only a "C" rating whereas the De Witt High School for white students has an "A" rating. The differences between grade "C" and grade "A" high schools are set out in detail in a pamphlet published by the State Department of Education in 1947 entitled "Policies, Regulations, and Criteria for Accrediting Secondary Schools." It appears from this pamphlet, which has been made a part of the record herein, that the difference between the two grades centers mainly around the qualifications of teachers and the library facilities furnished. Unfortunately, no proof was offered by either side as to the particular respects in which Immanuel fails to come up to grade "A" standards; it is, therefore, impossible for us to intelligently appraise in detail the problem of bringing Immanuel up to grade "A" level. Dr. McCuistion has testified, however, that it is possible for Immanuel to be brought up to a grade "A" rating by the end of three years; the reason that a minimum of three years will be

required is that the State Department of Education, in the absence of special circumstances, never raises the accreditation of a school more than one grade a year.

While it is true that Immanuel School does not have as high a rating as the De Witt High School, at the same time it is an adequate high school. We were favorably impressed with its curriculum. Moreover, it appears from the evidence that a graduate of a grade "C" high school has the same access to the colleges of this State as has a graduate of a grade "A" high school. There has been no showing here that any of the children of the plaintiffs, or any other children, have suffered actual damage to their education by attending Immanuel, or that they would have obtained any better education at a school of higher grade.

We feel that a reasonable time should be given within which the facilities of Immanuel may be improved and its rating increased. In this connection, plaintiffs argue that the directors of the Immanuel School are not before the court, and that no binding decree can be entered as to them. This is true, but the obligation of the decree will be upon the directors of the defendant district to undertake to assist the directors of the Immanuel District to improve the facilities there. If the Immanuel District is not willing to cooperate in raising the standard of its high school, the directors of the defendant district will have to make other arrangements to provide high school training for its Negro students.

As in the case of the elementary school, so in the case of the high school, there are certain minor inequalities which can be corrected within a short time. It must be arranged with the Immanuel District for the school term there to be increased to nine months, or the term of the De Witt School reduced to eight; a better vehicle must be provided for the transportation of Negro students from De Witt to Immanuel, and a regular driver employed to the end that this vehicle will be operated with regularity.

As heretofore stated, plaintiffs prayed for a declaratory judgment and also for an injunction restraining the defendants from maintaining a policy, custom, or usage of furnishing inferior school facilities for

Negro children. Counsel for neither plaintiffs nor defendants filed any requests for specific findings of fact and conclusions of law in this case, but in his pre-trial brief, filed herein, counsel for plaintiffs stated that Negro children ought to be admitted to the De Witt High School; this position, however, was apparently abandoned by plaintiffs in their main brief, however, where it was said:

"Plaintiffs have not pressed the issue as to the invalidity of. Section 11535 of Pope's Digest (now 7 Ark. Stats., 1947, 80-509) providing that school directors 'establish separate schools for white and colored persons'. They desire, however, immediate action by the school directors to the end that their children shall have substantially equal facilities and opportunities."

The question of the abolition of segregation in the schools of the district was not discussed by the defendants either in their pre-trial brief or main brief. When plaintiffs filed their brief in reply to the defendants' main brief, their counsel, apparently, returned to the position set forth in his pre-trial brief, for he says:

"Counsel for the plaintiffs has not posed directly for the attention of this Court during the trial the question of the admission of the Negro students to the existing high school facilities in the De Witt School System, and * * * this question is now brought to the attention· of the Court as a matter of law governing the evidence which has been adduced."

■ Assuming, without deciding, that the prayer of the complaint may be fairly construed as a demand by the plaintiffs for the admission of their children to the white high school, we do not feel that such action is necessary for the protection of the constitutional rights of the plaintiffs or their children, nor that such a course of action would be for the best interest of the children of either race. (See Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256.)

In the last analysis, this case and others like it ·present problems which are more than judicial and which involve elements of public finance, school administration, politics and sociology. The right of Negroes to educational facilities substantially equal to those furnished to whites is now almost universally recognized; but it must finally depend for its vindication and realization upon the enlightened public opinion of the people. The federal courts are not school boards; they are not prepared to take over the administration of the public schools of the several states; nor can they place themselves in the position of censors over the administration of the schools by the duly appointed and qualified officials thereof, to whose judgment and good faith much must be left. Neither can the federal courts properly endeavor to formulate or alter the public policies of the several states, nor should they, except in the most extreme instances, try to interfere with the mores and customs of the people in a matter as delicate and potentially explosive as race relationships. In such matters the courts ought to proceed slowly and with great care. Cf. Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432.

As herein stated, the Court is going to give the defendants a reasonable time within which to provide the Negro students of the district with substantially equal educational facilities to those enjoyed by the white students thereof. There is no reason to believe that the directors of the district will not proceed with all due diligence to bring about this equalization; the attitude manifested by them and by their attorneys all during the trial of this case has indicated that they recognize that they must take this action, and they have stated that they are willing to do so as soon as they are able. It is unfortunate that the Board did not appreciate this obligation sooner, but, on the other hand, these plaintiffs could have taken action sooner to protect their rights, and had they done so, the Court would not have been faced with a fait accompli as it was when the case was tried. The significant factor, however, is that the Board does now recognize its responsibility and asks for a chance to discharge it within a reasonable time. We are not going to attempt to say what a "reasonable time" in this case will be; that is a

matter properly left, for the time being, to the good faith and discretion of the Board. If the Board is dilatory, the plaintiffs are not without their remedy in the Courts.

Let a decree in accordance with the foregoing be entered.