**BUTLER et al. v. WILEMON.**

**Civ. No. 3750.**

United States District Court
N. D. Texas, Dallas Division.

Oct. 1, 1949.

U. Simpson Tate, C. B. Bunkley, Jr., Romeo Williams, Dallas, Tex., for plaintiff.

Lynn B. Griffith, Waxahachie, Tex., for defendant.

ATWELL, Chief Judge.

The above case comes on for hearing on show cause order for preliminary restraint. The petition prays for a permanent injunction, mandatory in its nature, to require the defendant school officers in the Waxahachie Independent School District to furnish the same physical necessities and the same teaching staff and classes for the Negroes as are being furnished for the white pupils. The defendants contend that that is now being done, and that substantially equal facilities are accorded.

The testimony shows that the funds for the Independent School District have been heretofore raised for 3.8 square miles. Since October, 1948, this territory has been extended so it now includes 89 square miles. only 87½% of the salary has been paid teachers in either white or colored schools. It is estimated that the tax which would be required to meet the necessities, will more than equal the $1.50 maximum which is permitted under the law.

Both schools are now accredited schools. The law requires ten students to a class. There were from 350 to 900 students in the white school and 100 Negro students, last year. There is one colored high school in the district, and three white high schools. The white schools have better buildings, but the location of the colored school is as good as that of the white schools and has the benefit of sewerage and water. None of the schools have outside drinking fountains for the students save one of the white schools which has one inside drinking fountain which was presented to it by a graduating class three years ago.

The softball grounds which are enjoyed by the white students do not belong to the school, but belong to an outside organization, and the white students are allowed to play there.

The food which is furnished the colored school is cooked in the white school and that food is carried from the white school to the colored school as it is to other white schools.

The buildings of the Negro high school were built in 1919 and 1940-41. The Bullard high school was built in 1913 and the Marvin high school was built in 1917. The Marvin elementary buildings were built in 1902, 1923, and, in 1939 those buildings were joined.

The baseball and football stadium is on the white high school grounds, but may also be used by the Negroes for their games. Not only the grounds but the lockers and showers, as well. The restrooms of both the colored and white are good and properly placed.

The slight differences between the physical paraphernalia of the schools are insubstantial. However, when the new tax is voted, as it is expected to be shortly, the Negro high school will be built upon a splendid tract which has been donated to the city and which is adjacent to the colored park. Arrangements have been made to go forward with that at the proper time.

The transportation from the Springs neighborhood, where there are a few colored students, has been paid for by the district. There is a bus which also runs for the convenience of other Negro students but that bus has never had more than seven students, and sometimes none at all.

There is a substantial difference in the classes being taught in the white schools and in the colored school. There must be arrangements made for the teaching of biology, general mathematics, geometry, vocational training, bookkeeping, public speaking, mechanical occupations, journalism, secretarial training and typewriting. There must be furnished, however, before that can be done, as many as ten students for each class. It has been explained that during this season of the year, the colored students are in the cotton fields. It may not be expected that the professor will stand at the door awaiting the contingency of the students' arriving.

Music is taught on the piano, in both schools, and such band instruments as the white students have were purchased by the parents of such students and not by the school.

The library which the Negroes have is not very well stocked, and that should be given attention and the Negroes should have a study hall which hall is not used for other purposes.

The invoked equities and the law which guides, are well known. Under the 14th Amendment, Negro students are entitled to public educational facilities substantially equal to those furnished to white students. If that has not been done, then the Negro citizen and taxpayers are entitled to an injunction compelling equalization of such facilities. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Sipuell v. Board of Regents, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247; Reynolds v. Board of Public Instruction, 5 Cir., 148 F.2d 754; Weighten v. Board of Trustees, D.C., 72 F.Supp. 948; Pitts v. Board of Trustees, D.C., 84 F.Supp. 975; Morris v. Williams, 8 Cir., 149 F.2d 703.

A court, in entering this field, should do so conscientiously, and with the best interest of the children of each race carefully considered. Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256; Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432.