STATE *ex rel.* MICHAEL *et al. v.* WITHAM *et al.*

(*Knoxville,* September Term, 1942.)

Opinion filed November 7, 1942.

252

CARL A. COWAN, of Knoxville, LEON A. RANSOM, of Washington, D. C., and Z. ALEXANDER LOOBY, of Nashville, for appellants.

ROY H. BEELER, Attorney-General, and WILLIAM F. BARRY and HARRY PHILLIPS, Assistant Attorneys-General, for appellees.

MR. JUSTICE DeHAVEN delivered the opinion of the Court.

Complainant, a negro, filed his petition in the Chancery Court of Knox County, Tennessee, seeking a peremptory writ of *mandamus* to compel his admittance as a regularly enrolled student in the University of Tennessee. The defendants are the University of Tennessee, its President and Deans and the members of its Board of Trustees. Five other petitions seeking the identical relief were filed by five other negroes. The six causes were subsequently consolidated by order of the chancellor and all pleadings subsequent to the order of consolidation were filed only in the instant case.

The substance of the allegations of the several petitions is that relators are citizens and taxpayers of the State of Tennessee and are qualified by previous attendance at accredited institutions of learning to enter the respective professional and postgraduate schools of the University of Tennessee; that the training provided in the respective departments of the University, to which they sought admission, is not available to negroes in any other state-supported institutions of learning and that relators have been denied access thereto solely because of their race and color and in violation of their consti-

tutional rights under the Fourteenth Amendment of the Constitution of the United States.

A joint demurrer and answer was filed on behalf of defendants. The demurrer was based upon two grounds, the substance of which, is (1) that the relators were seeking by mandamus to compel defendants to violate the criminal statutes of Tennessee, viz., Code, sections 11395-11397, which made it a misdemeanor for any school, college, or other place of learning, or any teacher or professor thereof, to permit white persons and colored persons to attend the same school or classes; and (2) that relators have a specific, adequate and complete remedy at law to review the action of the Board of Trustees of the University under section 9008 of the Code. The answer denied or demanded strict proof of practically all the material averments of the petitions.

While the consolidated causes were pending in the chancery court the General Assembly of Tennessee enacted chapter 43, Public Acts 1941, which became effective February 12, 1941. This Act is as follows:

"A Bill to be entitled: An Act to provide educational facilities for members of the negro race equivalent to those provided for members of the white race.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That the State Board of Education and the Commissioner of Education are hereby authorized and directed to provide educational training and instruction for negro citizens of Tennessee equivalent to that provided at the University of Tennessee by the State of Tennessee for white citizens of Tennessee. Such training and instruction shall be made available in a manner to be prescribed by the State Board of Education and the Commissioner of Education; provided, that members of the negro race and white race shall not

attend the same institution or place of learning. The facilities of the Agricultural and Industrial State College, and other institutions located in Tennessee, may be used when deemed advisable by the State Board of Education and the Commissioner of Education, insofar as the facilities of same are adequate.

"Sec. 2. Be it further enacted, That the cost of providing such facilities shall be paid out of the appropriations made to the State Board of Education or from any other available funds.

"Sec. 3. Be it further enacted, That this Act shall take effect from and after its passage, the public welfare requiring it."

The General Assembly on February 15, 1941, enacted the Miscellaneous Appropriation Bill, being chapter 87, Public Acts 1941; section 5 thereof is as follows:

"Sec. 5. Be it further enacted, That there is hereby appropriated to be expended by the State Board of Education and Commissioner of Education, with the approval of the Governor, a sum sufficient to authorize said officials to comply with the provisions of an Act passed at this session of the Legislature to provide educational facilities for the members of the negro race equivalent to those provided for the members of the white race, the same being Chapter No. — of the Public Acts of 1941, Senate Bill No. 379, House Bill No. 509."

The General Assembly at the same session enacted the General Appropriation Bill, Chapter 16, Public Acts 1941. Among other appropriations made was one for the Tennessee Agricultural and Industrial State College for Negroes of $110,000 for the fiscal year 1941-1942, and $110,000 for the fiscal year 1942-1943.

Defendants, by leave of the chancellor, filed a supple-

mental answer and set up the legislation just above mentioned. Among other things, it was averred that:

"Defendants further showed that at the regular meeting of the State Board of Education on February 7, 1941, a motion was adopted for the appointment of a sub-committee to work out recommendations for installing graduate work at the Tennessee Agricultural and Industrial State College for Negroes, and to confer with the President of the University of Tennessee, and to request him to appoint a committee from the University for the purpose of collaborating with said sub-committee of the State Board of Education on the question of graduate work for negroes, which sub-committee is to report to the State Board of Education at its next regular quarterly meeting. Pursuant to said motion, the Chairman of the State Board of Education has appointed a sub-committee composed of Howard B. Shofner, C. Y. Clark and Doak S. Campbell. A certified copy of the proceedings of the State Board of Education in this connection is filed herewith as Exhibit 2 to this supplemental answer.

"Defendants therefore aver that the educational facilities prayed for under the petition for *mandamus* in this cause, if not already provided, are to be provided by the State of Tennessee under the requirements of Chapter 43, Public Acts of 1941, and the unlimited appropriation made by the Legislature of Tennessee for this purpose.

"Defendants further say that the right of action, if any, of relators, is not against defendants, but is against the State Board of Edcation, whose duty it is to effectuate the requirements of Chapter 43, Public Acts of 1941."

The cause came on to be heard before the chancellor upon the entire record, from all of which he was of the

opinion and decreed that it appeared "to the satisfaction of the Court that by virtue of Chapter 43, Public Acts of 1941, and Section 5, Chapter 87, Public Acts of 1941, the questions involved in this litigation have become moot and that all consolidated suits should be dismissed at the cost of the respondents."

Complainants have appealed to this court and assigned errors.

The determinative question presented on the appeal is whether or not the chancellor erred in holding that since the enactment of the 1941 legislation the causes are now moot and in ordering that all of the consolidated suits be dismissed.

 Section 11395 of the Code of Tennessee prohibits the co-education of white and colored races and their attendance at the same school. Race separation for purposes of education does not infringe the rights of either the white or colored races guaranteed by the Fourteenth Amendment, provided substantially equivalent educational instruction and training is offered within the state to citizen students of both races. *Greenwood* v. *Rickman,* 145 Tenn., 361, 235 S. W., 425; *Gong Lum* v. *Rice,* 275 U. S., 78, 48 S. Ct., 91, 72 L. Ed., 172; *State of Missouri ex rel. Gaines* v. *Canada,* 305 U. S., 337, 59 S. Ct., 232, 83 L. Ed., 208; *Plessy* v. *Ferguson,* 163 U. S., 537, 16 S. Ct., 1138, 41 L. Ed., 256.

 The declared object of chapter 43, Public Acts 1941, of the General Assembly of Tennessee, is to provide educational training and instruction for negro citizens of Tennessee equivalent to that provided by the State at the University of Tennessee. It is objected by appellants that the Act leaves it to the discretion of the State Board of Education to determine whether or not such equal facilities of education for negro citizens will be

established within the State. This contention is, we think, wholly without merit. The Act by its express terms is mandatory in character. The language employed in the Act is, "That the State Board of Education and the Commissioner of Education are hereby authorized and directed" to provide such equivalent training and instruction. The word "directed" is mandatory in character. The verb "direct" means "to give an order; to instruct authoritatively." Webster's New International Dictionary. No discretion whatever is vested in the State Board of Education under the Act as to the performance of its mandates. The manner of providing educational training and instruction for negro citizens equivalent to that provided for white citizens at the University of Tennessee is for the Board of Education to determine in its sound discretion, but the furnishing of such equivalent instruction is mandatory. And the Act must be construed to mean that such equivalent instruction shall be furnished within the State of Tennessee.

Upon the demand of a negro upon the State Board of Education for training and instruction in any branch of learning taught in the University of Tennessee, it is the duty of the Board to provide such negro with equal facilities of instruction in such subjects as that enjoyed by the students of the University of Tennessee. The State Board of Education is entitled to reasonable advance notice of the intention of a negro student to require such facilities. *Bluford* v. *Canada* (D. C.), 32 F. Supp., 707, appeal dismissed, 8 Cir., 119 F. (2d), 799. No such advance notice by appellants is shown in the record.

It is contended for appellants that funds are not available for the establishment of the desired training and instruction. It is provided in section 2, chapter 43, Public Acts 1941: "That the cost of providing such fa-

cilities shall be paid out of the appropriations made to the State Board of Education or from any other available funds.'' This provision is quite definite. But other funds are made available to the Board under section 5, chapter 87, Public Acts 1941.

It does not appear that the State Board of Education is seeking in any way to evade the performance of the duties placed upon it by chapter 43, Public Acts 1941, or that it is lacking sufficient funds to carry out the purposes of the Act. The state having provided a full, adequate and complete method by which negroes may obtain educational training and instruction equivalent to that provided at the University of Tennessee, a decision of the issues made in the consolidated causes becomes unnecessary and improper. The legislation of 1941 took no rights away from appellants; on the contrary the right to equality in education with white students was specifically recognized and the method by which those rights would be satisfied was set forth in the legislation. What more could be demanded?

We find no merit in any of the assignments of error. The result is that the decree of the chancellor must be affirmed. Appellants will pay the costs incident to the appeal.