### GRAY et al. v. UNIVERSITY OF TENNESSEE et al.
No. 1567.

United States District Court,
E. D. Tennessee, N. D.
April 20, 1951.

464

Carl A. Cowan, Avon N. Williams, Jr., Knoxville, Tenn., Z. Alexander Looby, Nashville, Tenn., Thurgood Marshall, New York City, for plaintiffs.

John J. Hooker, K. Harlan Dodson, Jr., Nashville, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

This case was heard by a three-judge court on the record, briefs and argument of counsel for the respective parties on plaintiffs' motion for summary judgment in their favor under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

In an opinion by Circuit Judge Miller, in which Chief District Judge Darr and District Judge Taylor of the Eastern District of Tennessee, concurred, the Court held that the issue involved is alleged unjust discrimination against the plaintiffs under the equal protection clause of the Fourteenth Amendment of the Constitution of the United States and not the constitutionality of the Tennessee statutes and constitutional provisions referred to in the complaint. Following this opinion and the

order entered pursuant thereto, Judge Miller and Judge Darr withdrew from the case, which is now before this Court for decision on the motion.

Plaintiffs Gray and Alexander have applied for admission to the Graduate School and plaintiffs Blakeney and Patterson have applied for admission to the College of Law, of the University of Tennessee. All admittedly are qualified for admission, except for the fact that they are Negroes.

The matter of their applications was referred by University authorities to the Board of Trustees, who disposed of the matter by the following resolution:

"Whereas, the Constitution and the statutes of the State of Tennessee expressly provide that there shall be segregation in the education of the races in schools and colleges in the State and that a violation of the laws of the State in this regard subjects the violator to prosecution, conviction, and punishment as therein provided; and,

"Whereas, this Board is bound by the Constitutional provision and acts referred to;

"Be it therefore resolved, that the applications by members of the Negro race for admission as students into The University of Tennessee be and the same are hereby denied."

Following the indicated action by the Board of Trustees, plaintiffs filed their joint complaint for themselves and on behalf of all Negro citizens similarly situated, praying for a temporary and, after hearing, a permanent order restraining the defendants from executing the exclusion order of the Board of Trustees against the plaintiffs, or other Negroes similarly situated, and from all action pursuant to the constitution and statutes of the State of Tennessee, and the custom or usage of the defendants, respecting the requirement of segregation of whites and Negroes in state-supported educational institutions and exclusion of Negroes from the University of Tennessee, their references being to Article 11, sec. 12, of the state constitution, to sections 2403.1, 2403.3, 11395, 11396, and 11397 of the Tennessee Code, and the custom and usage of defendants of excluding Negroes from all colleges, schools, departments, and divisions of the University of Tennessee, including the Graduate School and the College of Law.

Defenses interposed are nine in number, but in substance they are these: That defendants, in rejecting the applications of the plaintiffs, were and are obeying the mandates of the segregation provisions of the constitution and laws of the State of Tennessee; that those provisions are in exercise of the police powers reserved to the states and are valid, the Fourteenth Amendment and laws enacted thereunder to the contrary notwithstanding, and that these plaintiffs have no standing to bring this action for the reason that they have not exhausted their administrative remedies under the equivalent facilities act of 1941, Code section 2403.3. The plaintiffs, after alleging in their complaint that the University of Tennessee maintains a Graduate School and a College of Law which offer to white students the courses sought by plaintiffs, make the following specific allegation, which defendants, for failure to deny, admit: "There is no other institution maintained or operated by the State of Tennessee at which plaintiffs might obtain the graduate and/or legal education for which they respectively have applied to The University of Tennessee."

It is, of course, recognized that the Constitution of the United States is one of enumerated and delegated powers. To remove original doubt as to the character of federal powers, the states adopted the Tenth Amendment, which provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The Constitution contains no specific delegation of police powers, and those powers are accordingly reserved. But a glance discloses that, in relation to the Tenth Amendment, the Constitution contains two groups of powers, namely, the previously-delegated powers and the subsequently-delegated powers. By adoption of the Fourteenth Amendment, following adoption of the Tenth Amendment, the states consented to

limitations upon their reserved powers, particularly in the following respects: "* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. * * *"

It is recognized that "The police power of a state extends beyond health, morals and safety, and comprehends the duty, *within constitutional limitations,* to protect the well-being and tranquility of a community." Kovacs v. Cooper, 336 U.S. 77, 83, 69 S.Ct. 448, 451, 93 L.Ed. 513. (Italics supplied). States "have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, *so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law."* Whitaker v. State of North Carolina, 335 U.S. 525, 536, 69 S.Ct. 251, 257, 93 L.Ed. 212. (Italics supplied). In the foregoing quotations, the italicized portions point up the limitation upon the exercise of a state's police powers.

Segregation by law may, in a given situation, be a valid exercise of the state's police powers. It has been so recognized with respect to schools. Gong Lum et al. v. Rice et al., 275 U.S. 78, 48 S.Ct. 91, 72 L.Ed. 172. Also, as to segregation on intrastate trains. Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256. But where enforcement by the state of a law ran afoul of the Fourteenth Amendment by denying members of a particular race or nationality equal rights as to property or the equal protection of the laws, the state action has been condemned. This was the result where state law discriminated against aliens as to the privilege of employment. Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131. The same result was reached as to enforcement of restrictive covenants in deeds, Shelley et ux. v. Kraemer et ux., 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161; in the housing segregation cases, City of Richmond v. Deans, 4 Cir., 37 F.2d 712, affirmed 281 U.S. 704, 50 S.Ct.

407, 74 L.Ed. 1128; Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149: and in the cases where segregation has resulted in inequality of educational opportunities for Negroes, Sweatt v. Painter et al., 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114; McLaurin v. Oklahoma State Regents for Higher Ed., 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149. From these cases it appears to be well settled that exercise of the state's police powers ceases to be valid when it violates the prohibitions of the Fourteenth Amendment. The defense on this ground, therefore, fails.

The second question is whether the plaintiffs have present standing to bring this action. To understand the defense interposed here, it is desirable to look at the historical background of the act of 1941, of which the Court takes judicial notice.

On October 18, 1939, six Negroes applied for admission to the University of Tennessee, four to the Graduate Department and two to the College of Law. Being denied admission, they filed their separate petitions for mandamus in the Chancery Court of Knox County, Tennessee, to require their admission. Following denial of the petitions in a consolidated proceeding, an appeal was taken to the Supreme Court of Tennessee, where the action of the Chancellor was affirmed by opinion filed November 7, 1942. State ex rel. Michael et al. v. Witham et al., 179 Tenn. 250, 165 S.W.2d 378. The case was not disposed of by the Chancellor on its merits, but on the ground that it had become moot. While the case was pending in the Chancery Court, the state legislature enacted the act of 1941, now carried in the Code as sec. 2403.3, and entitled, *Educational facilities for Negro citizens equivalent to those provided for white citizens:* "The state board of education and the commissioner of education are hereby authorized and directed to provide educational training and instruction for negro citizens of Tennessee equivalent to that provided at the University of Tennessee by the State of Tennessee for white citizens of Tennessee. Such training and instruction shall be made available in a manner to be prescribed by the state board of education

and the commissioner of education; provided, that members of the negro race and white race shall not attend the same institution or place of learning. The facilities of the Agricultural and Industrial State College, and other institutions located in Tennessee, may be used when deemed advisable by the state board of education and the commissioner of education, insofar as the facilities of same are adequate."

Following enactment of the statute a supplemental answer was filed in the case then pending, in which it was averred that pursuant to the Act certain committees had been appointed by the state board of education, with instructions to report at the board's next regular meeting, an averment which suggested that the act of 1941 was to be made operative expeditiously.

The Supreme Court of Tennessee, in affirming the Chancellor's dismissal of the consolidated case, construed the act of 1941 to be mandatory in character. "No discretion whatever is vested in the State Board of Education, under the Act as to the performance of its mandates. The manner of providing educational training and instruction for negro citizens equivalent to that provided for white citizens at the University of Tennessee is for the Board of Education to determine in its sound discretion, but the furnishing of such equivalent instruction is mandatory." State ex rel. Michael et al. v. Witham et al., 179 Tenn. 250, 257, 165 S.W.2d 378, 381.

The court also said 179 Tenn. at page 257, 165 S.W.2d at page 381. "Upon the demand of a negro upon the State Board of Education for training and instruction in any branch of learning taught in the University of Tennessee, it is the duty of the Board to provide such negro with equal facilities of instruction in such subjects as that enjoyed by the students of the University of Tennessee. The State Board of Education is entitled to reasonable advance notice of the intention of a negro student to require such facilities. * * * No such advance notice by appellants is shown in the record."

At page 258 of 179 Tenn., at page 381 of 165 S.W.2d, the court further said: "It does not appear that the State Board of Education is seeking in any way to evade the performance of the duties placed upon it by chapter 43, Public Acts 1941, or that it is lacking sufficient funds to carry out the purposes of the Act. The state having provided a full, adequate and complete method by which negroes may obtain educational training and instruction equivalent to that provided at the University of Tennessee, a decision of the issues made in the consolidated causes becomes unnecessary and improper. The legislation of 1941 took no rights away from appellants; on the contrary the right to equality in education with white students was specifically recognized and the method by which those rights would be satisfied was set forth in the legislation. What more could be demanded?"

By failure to deny the allegations of the complaint, defendants admit that the directive, though mandatory, has not been carried out. Nevertheless, it is urged by defendants that these plaintiffs have no standing here until they have petitioned the state board of education to furnish the equivalent educational training and instruction for Negroes provided for by the act. The Supreme Court of the state noted in its opinion that the then applicants for admission to the University of Tennessee had given to the state board "no such advance notice" of a desire to be furnished facilities under the act. That omission is understandable here for the reason that their applications for admission to the University of Tennessee had not been finally disposed of by the courts, and the need of their applying to the state board had not been established.

Since the enactment of the Act of 1941 and the decision in State ex rel. Michael et al. v. Witham et al., 179 Tenn. 250, 165 S.W.2d 378, the Supreme Court of the United States has emphasized the pronouncement of one of its older cases as to a particular element of equal protection. In State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208, it appeared that Lincoln University, a state-supported school for Negroes, intended to establish a law school. As to this intention the court said: "* * * it cannot be

said that a mere declaration of purpose, still unfulfilled, is enough." Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 346, 59 S.Ct. 232, 235. In the same case, 305 U.S. at page 351, 59 S.Ct. at page 237, the court said: "Here, petitioner's right was a personal one. It was as an individual that he was entitled to the equal protection of the laws, and the State was bound to furnish him within its borders facilities for legal education substantially equal to those which the State there afforded for persons of the white race, * .* *." Later declarations indicate that the two quotations should be read together and that when so read they state the requirement of equality of opportunity to be personal and immediate.

In Fisher v. Hurst, 333 U.S. 147, 68 S. Ct. 389, 92 L.Ed. 604, the court emphasized its position that equality of opportunity in education means present equality, not the promise of future equality. This re-emphasized the necessity of equality as to time of an earlier decision, where the court said: "The State must provide it for her in conformity with the equal protection clause of the Fourteenth Amendment and provide it as soon as it does for applicants of any other group." Sipuel v. Board of Regents of the University of Oklahoma et al., 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247. In the holding in McLaurin v. Oklahoma State Regents, 339 U.S. 637, 642, 70 S.Ct. 851, 854, 851, 94 L.Ed. 1149, the court said: "We conclude that the conditions under which this appellant is required to receive his education deprive him of his personal and present right to the equal protection of the laws." That equality of educational opportunity for Negroes means present equality was emphasized once more in Sweatt v. Painter et al., 339 U.S. 629, 635, 70 S.Ct. 848, 94 L.Ed. 1114: "This Court has stated unanimously that 'The State must provide (legal education) for (petitioner) in conformity with the equal protection clause of the Fourteenth Amendment and provide it as soon as it does for applicants of any other group.' Sipuel v. Board of Regents [of the University of Oklahoma], 1948, 332 U.S. 631, 633, 68 S.Ct. 299, 92 L.Ed. 247." In view of these recent declarations of the Supreme Court of the United States, this Court is forced to conclude that the defense of exhaustion of administrative remedies fails.

■ The Court finds that under the Gaines, Sipuel, Sweatt and McLaurin cases heretofore cited, these plaintiffs are being denied their right to the equal protection of the laws as provided by the Fourteenth Amendment and holds that under the decisions of the Supreme Court the plaintiffs are entitled to be admitted to the schools of the University of Tennessee to which they have applied for admission. Believing that the University authorities will either comply with the law as herein declared or take the case up on appeal, the Court does not deem an injunctive order presently to be appropriate. The case, however, will be retained on the docket for such orders as may seem proper· when it appears that the applicable law has been finally declared.