John FERGUSON, et al., Appellants,

v.

Paul WILLIAMS, Appellee.

No. 13871.

Court of Appeals of Texas,
Austin.

March 14, 1984.
Rehearing Denied May 2, 1984.

Harold L. Coit, Austin, for John Ferguson.

Bob Andrews, Austin, for Robert S. Welborn, Jr.

Richard L. Crozier, Hearne, Knolle, Lewallen, Livingston & Holcomb, Austin, for appellee.

Before SHANNON, POWERS and BRADY, JJ.

BRADY, Justice.

Appellee Williams brought suit to recover funds invested and expended by him in a joint venture with appellants Ferguson and

Welborn. In a bench trial, the trial court rendered judgment for Williams against appellants jointly and severally in the sum of $30,518.53 damages, plus $5,000.00 exemplary damages and attorney fees of $20,719.00. The trial court filed findings of fact and conclusions of law holding that Williams' interest in the venture was an "investment contract" and thus a security; that the same was not registered with the State Securities Board; that the same was sold by Ferguson and Welborn by means of false representations; that appellants were also negligent in the management of the venture; and that appellee Williams was entitled to rescind and recover all funds invested or expended by him in the venture.

Appellants argue a total of eighty-eight points of error, but for the sake of brevity, and because of our holding, we need consider only those points of error having to do with appellants' arguments that (1) this was not an "investment contract" or security, but a joint venture partnership interest and (2) the findings by the trial court of negligence on the part of Ferguson and Welborn are contrary to the great weight and preponderance of the evidence. We agree that the joint venture was not a sale of a security. Accordingly, we reverse the judgment of the trial court and render judgment that appellee take nothing by his suit.

On March 1, 1979, Ferguson and Welborn, doing business as the F & W Development Company, purchased two apartment buildings containing thirty-two two-bedroom units located near Bergstrom Air Force Base from the U.S. Corp of Engineers. The buildings were to be removed to a new location, rehabilitated, leased to tenants, and then sold at a profit by the partners. Two months later, the appellants, running low on cash, contacted appellee Williams and sold him a one-fourth interest in the venture for $15,000.00. With the infusion of this additional capital, the appellants purchased land near Bergstrom, depositing $5,000.00 as earnest money. Appellants used the balance of Williams' money to secure a $300,000.00 permanent

mortgage loan commitment. However, because of their inability to obtain interim or construction financing, the venture failed and the buildings eventually were dismantled and materials sold to pay debts.

At trial, Williams testified that appellants made false representations concerning the potential quick profits, representing that "there was no reason in the world why he should not double his money within six to eight months" and that Williams could "make three to four times his investment" during that period. Further, Williams stated that Ferguson told him that Welborn would be able to obtain financing for the project in San Antonio, that appellee would not be required to incur any personal liability on any debts of the venture, and that Williams would not be involved in the management or operation of the venture, although Williams acknowledged that the venture was a general partnership. Williams also claimed that appellants failed to disclose terms of the contract made with the Corps of Engineers, or the amount of capital appellants had invested in the project. There was no formal agreement between these parties.

In our view, Williams played a significant role in the actual business of the partnership. Appellee volunteered his employees to help get the buildings ready to move, sending an overseer for the job. Appellee volunteered the use of his front-end loader to clean up the building site, kept in touch with the progress of the work, and, according to the evidence, talked to Ferguson at least once or twice a week from May, 1979 until January, 1980. When the partnership bank account needed money, Williams advanced an additional $5,000.00 to help get this project "rolling." Williams aided the business in obtaining an $11,000.00 loan from the Bank of Austin. He also signed a loan application with Ryan Mortgage Company for a permanent loan commitment for the partnership. He participated in preparation of a brochure, paid bills of the firm, and inspected the site chosen to relocate the buildings. We agree with appellants' argument that Williams' conduct was that

of a partner and "not that of a passive investor."

Further, it is obvious that Williams throughout the entire venture considered himself a partner with Ferguson and Welborn. On September 14, 1979, Williams gave Ferguson an additional $5,000.00 with the understanding that his interest in the venture be increased from a twenty-five percent to a one-third interest which would make him an equal partner with Ferguson and Welborn. To indicate the extent of Williams' continued participation in the affairs of the venture, the following is a list of payments made by him:

| | | |
|---|---|---|
| 8/2/79 | To Cesco for rental on scaffolding | $   69.39 |
| 9/27/79 | To I.R. Ischy for labor to tear down brick | 155.00 |
| 2/22/80 | To Bank of Austin for joint note payment | 333.33 |
| 5/21/80 | To A. Austin Storage Centers | 261.00 |
| 5/22/80 | To Bank of Austin for joint note payment | 1,436.80 |
| 6/6/80 | To M.H. Reibshlaeger | 200.00 |

During the above periods of time, Williams voluntarily furnished a pick-up truck, a dump truck, and a John Deere front-end loader to help clean up the site when the buildings were to be moved off. All of the above actions on the part of Williams indicate his participation in the business of the partnership or joint venture of these parties.

The record indicates that all three parties participated in the management and operations of the venture.

■ The Securities Act, Tex.Rev.Civ. Stat.Ann. arts. 581–1 et seq. (1964 & Supp. 1982), definition of securities subject to the provisions of the act is an all-encompassing one which includes "investment contract." This term has been defined by the United States Supreme Court, in Securities and Exchange Commission v. W.J. Howey Co., 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946) as:

> a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.

Appellee then states correctly that the Howey test was specifically applied to the Texas Securities Act by the Texas Supreme Court in Searsy v. Commercial Trading Corp., 560 S.W.2d 637 (Tex.1977). The four criteria under the test in order to establish an "investment contract" are: (1) an investment of money; (2) in a common enterprise; (3) with expectation of profits; and (4) derived solely from the efforts of others. From the review of the evidence here, it is obvious that Williams fails the Howey test because of the multitude of his activities in behalf of the enterprise. Under Searsy, our Supreme Court, in construing commodity-option investors' relations with a promoter, wrote that the more realistic test is whether the investor made any "significant efforts" which are those "essential managerial efforts which affect the failure or success of the enterprise." The evidence establishes that Williams' efforts significantly affected the failure or success of the enterprise by helping prepare the buildings for removal, advancing more funds at a critical time, applying for permanent financing, aiding in preparation of a brochure, inspecting prospective sites for relocation, and participating in other ways in the business of the venture.

■ This venture is not the type of transaction the Securities Act contemplates for the protection of investors. The early cases construing the act indicate that the Legislature had in mind the prevention of stockselling schemes, the only purpose of which was to defraud an unsuspecting public. One of the Texas Courts of Civil Appeals used the following language:

> There can be no doubt that the Legislature of this State had ample reason for passing a drastic and far-reaching Securities Act, for, we believe it can be safely said that no state in the Union has offered a richer field for stock promoters and the sale of worthless stock and secu-

rities than has Texas. *Smith v. Fishback*, 123 S.W.2d 771, 778 (Tex.Civ.App. 1938, writ ref'd).

Even if Williams' interest in the venture was a "security," it was exempt from registration by virtue of art. 581–5 I of the Securities Act which provides that the Act will not apply when a sale is made without public solicitation or advertisements and the total number of security holders does not exceed thirty-five.

■ As to the findings by the trial court that appellants Ferguson and Welborn were guilty of negligence in the management of the affairs of the business and that such negligence was the proximate cause of Williams' loss of his invested funds, we hold as a matter of law that negligence in the management of the affairs of a general partnership or joint venture does not create any right of action against that partner by other members of the partnership. It is only when there is a breach of trust, such as when one partner or joint venturer holds property or assets belonging to the partnership or venture, and converts such to his own use, would such action lie. In the ordinary management and operation of a general partnership or joint venture there is no liability to the other partners or joint venturers for the negligence in the management or operation of the affairs of the enterprise, such as the six acts of "negligence" found by the trial court. The six findings of "negligence" by the trial court were that appellants were negligent: (1) "in the manner in which they sought construction and permanent financing for the venture"; (2) "in failing to promptly retain a house moving firm to move the condemned buildings"; (3) "in failing to adequately capitalize the venture"; (4) "in failing to promptly secure the necessary real property for the project"; (5) "in failing to diligently pursue completion of the venture's responsibility under its contract with the U.S. Army Corps of Engineers"; and (6) "in failing to truthfully and fully disclose to Williams all details of the venture." Appellee cites us no authority, and we have found none, to support his theory of this case. None of the "negligence" findings involve any breach of trust or fiduciary duty of Ferguson and Welborn to Williams.

■ By six points of error, appellants attack the findings of the trial court that representations made to Williams to induce him to join with appellants in this venture were false. These representations were that Williams would double his money within six to eight months and that he could make three or four times his investment during that period. Williams also asserts that appellants represented they could get financing for the project in San Antonio and that Williams would not be required to incur any personal liability on any debts of the venture. On cross-examination, Williams admitted that these representations were qualified in that Ferguson said that the specified events would occur "if everything works out, if everything goes right." Further, the representations which the trial court found to be false were for the most part expressions of opinion and would not constitute actionable fraud.

■ Appellants cite *Cassel v. West*, 98 S.W.2d 437, 439 (Tex.Civ.App.1936, writ ref'd), in which the court stated:

> Ordinarily a promise to perform some act in the future, although made by one party as a representation to induce the other to enter into the contract, will not amount to fraud in legal acceptation, though subsequently the promise is, without any excuse, entirely broken and non-fulfilled. This is a plain and well-established proposition, about which there can be no controversy; otherwise, every breach of a contract would amount to fraud. In order for a promise to constitute fraud it is necessary that it should have been made with the intent at the time that it would not be performed, and with the intention, design and purpose of deceiving .... Fraud of this character must be such as carries with it moral turpitude or intentional wrong.

Appellee replies that the *Cassel* decision involves common law fraud, and since this case deals solely with the "untruth and

omission" provision of the Securities Act, such rule does not apply.

The judgment of the trial court is reversed and judgment is here rendered that the appellee Williams take nothing by his suit.