803 P.2d 939

Ron JOHNSON, a single man, Country Club Estates, a limited partnership, Plaintiffs/Appellants,

v.

Murray WEBER and Carol Weber, husband and wife, Defendants/ Appellees.

No. 2 CA–CV 90–0135.

Court of Appeals of Arizona, Division 2, Department B.

Dec. 20, 1990.

Slutes, Sakrison, Even, Grant & Pelander, P.C. by Tom Slutes, Tucson, for plaintiffs/appellants.

Rosen & Friederich by Dennis A. Rosen, Tucson, for defendants/appellees.

OPINION

FERNANDEZ, Chief Judge.

This case involves a limited partnership that was formed to develop a parcel of Tucson land. After the partnership was unable to develop the property and all the assets were lost, appellants, the limited partner, Country Club Estates, itself a limited partnership, and its general partner, Ron Johnson (hereafter collectively referred to as Johnson), sued one of the general partners, appellee Murray Weber, contending that Weber breached the partnership agreement and was liable for either breach of fiduciary duty or negligence. Johnson appeals from an adverse ruling. We affirm.

Johnson owned 15 acres in northwest Tucson, ten of which were encumbered. Johnson is an experienced California real estate developer who had listed the property for sale because the property was in foreclosure. As a result of the listing, Johnson was introduced to Murray Weber and Harvey Squire, and the three agreed to develop the property with either townhouses or single family residences.

The parties entered into a limited partnership agreement in January 1985. Under the agreement, Weber and Squire were general partners, and Country Club Estates was a limited partner. As his capital contribution, Johnson conveyed the title to the 15 acres to the partnership. The agreement states that the general partners were not required to make an initial capital contribution. The parties agreed that Squire

would be the managing partner who would take all steps necessary to obtain rezoning and construction financing and to build and sell the units. Weber was to supply his financial statement to obtain financing, and Johnson had no right to participate in management.

The partnership obtained a $250,000 loan from MeraBank against the property. Approximately $160,000 of the loan was used to pay the encumbrance on the property, and the balance was used as working capital. Squire hired Dooley, Jones & Associates to conduct a feasibility study and to obtain rezoning and approval of the final plat. Dooley, Jones began work in the spring of 1985 and ceased in the fall of 1986 because its bill was unpaid. During the course of rezoning, Pima County imposed a requirement that a road be extended to connect the proposed project with a main road. The requirement would have cost the partnership $80,000 to $110,000. Half a dozen attempts by Squire to obtain either interim or permanent financing proved to be unsuccessful. By the fall of 1986, the partnership was out of money and owed more than $100,000 to architects, engineers, attorneys, and real estate brokers.

After the partnership defaulted on the $250,000 loan, Squire filed a Chapter 11 bankruptcy petition. He also filed personal bankruptcy and sold his partnership interest to Weber. The bankruptcy proceeding was then converted to a Chapter 7 proceeding, and the bankruptcy trustee conveyed the property to MeraBank.

Johnson filed suit for the loss of the property and the expected profits from its development. The court awarded Weber judgment after a one-day court trial. On appeal, Johnson contends that the partnership agreement required the general partners to pay the partnership's obligations. Johnson also contends that Weber should be liable for breach of fiduciary duty or negligence for the manner in which the partnership business was conducted, contending that Squire was inexperienced and incompetent. We affirm.

## OBLIGATIONS OF GENERAL PARTNERS

Johnson argues that Weber was required to contribute capital to the partnership, noting that the agreement provides that the partnership was formed for the purpose of acquiring and developing the property. Ron Johnson testified that to him the agreement meant that development *had* to occur so that if money were needed, the general partners had to contribute it. Article XIII(B) lists the things the general partners are "authorized, directed and empowered" to do, one of which is to pay all expenses and obligations of the partnership. Johnson contends that because the partners were to pay the partnership's debts, they were thus required to pay them with their own funds.

■ We find no merit to those contentions. The partnership agreement, which was drafted by Johnson's attorney, nowhere *requires* the general partners to contribute funds. The only specific references to partner contributions are in article VI, which provides that the general partners are not required to make an initial capital contribution, and article VII, which governs the maintenance of a capital account for each partner. The use of the word "directed" in conjunction with the words "authorized" and "empowered" in article XIII does not mean that the partners were to contribute personal funds. That article is merely a list of things the partners *could* do. In the cases cited by Johnson, the word "directed," standing alone, was construed in statutes to mean that a public officer or employee must do something. *Levandoski v. Pacheco,* 84 Ariz. 55, 323 P.2d 951 (1958); *Fain v. Fain,* 179 Ga.App. 285, 346 S.E.2d 96 (1986); *Upshur v. Mayor of Baltimore,* 94 Md. 743, 51 A. 953 (1902); *State ex rel. Michael v. Witham,* 179 Tenn. 250, 165 S.W.2d 378 (1942). In *In re Hilliard's Estate,* 86 N.Y. S.2d 158 (Sur.Ct.1948), the court, in construing a will, observed that " 'authorize' connotes a grant of discretion" and " 'direct' connotes a mandate" so that the use of the two together created confusion. *Id.* at 159. Even if we accept Johnson's argu-

ment that the partners were required by that article to pay the debts, however, that still does not create a requirement that they be paid from the partners' personal funds.

Johnson also argues that two of the trial court's findings violate the parol evidence rule. Those findings read as follows:

19. The partnership agreement contemplated the general partners borrowing the money to develop the project. There was no intent that either of the general partners ever supply personal funds to the partnership.

20. Murray Weber's obligation was not to make capital contributions of any kind but instead to provide his financial statement to procure a loan for the partnership's development project and, if necessary, to personally guarantee the loan.

The findings are in reality conclusions of law interpreting the agreement. They have nothing to do, however, with the parol evidence rule.

We agree with the trial court that the agreement did not require the general partners to contribute capital. Even if Johnson, as a limited partner with no liability for the unpaid bills, had standing to complain about it, Weber's failure to pay those bills is not a breach of the agreement.

## BREACH OF FIDUCIARY DUTY OR NEGLIGENCE

■ Johnson next contends that Weber breached his fiduciary duty to his limited partner because Squire was incompetent and was unable to develop the property and because Weber failed to pay the partnership's debts. It is not disputed that a general partner owes a fiduciary duty to either a limited or a general partner. *Jerman v. O'Leary*, 145 Ariz. 397, 701 P.2d 1205 (App. 1985); *Wood v. Holiday Mobile Home Resorts, Inc.*, 128 Ariz. 274, 625 P.2d 337 (App.1980), *cert. denied*, 454 U.S. 826, 102 S.Ct. 115, 70 L.Ed.2d 100 (1981); A.R.S. § 29–221. There was no claim, however, that Weber was either disloyal or dishonest. The only claim is that he should be liable for Squire's inadequacies and for the fact that the development was unsuccess-

ful. That is not the essence of a breach of fiduciary duty. *See DeSantis v. Dixon*, 72 Ariz. 345, 236 P.2d 38 (1951).

■ Nor is there any cause of action for negligent management of the partnership. A general partner does not guarantee that a partnership will be profitable. The holding in a similar case from Texas is instructive.

As to the findings by the trial court that appellants Ferguson and Welborn were guilty of negligence in the management of the affairs of the business and that such negligence was the proximate cause of Williams' loss of his invested funds, we hold as a matter of law that negligence in the management of the affairs of a general partnership or joint venture does not create any right of action against that partner by other members of the partnership. It is only when there is a breach of trust, such as when one partner or joint venturer holds property or assets belonging to the partnership or venture, and converts such to his own use, would such action lie. In the ordinary management and operation of a general partnership or joint venture there is no liability to the other partners or joint venturers for the negligence in the management or operation of the affairs of the enterprise....

*Ferguson v. Williams*, 670 S.W.2d 327, 331 (Tex.Ct.App.1984).

Appellee will be awarded attorney's fees on appeal upon compliance with Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

Affirmed.

ROLL, P.J., and HOWARD, J., concur.